R. N. JONES v. THE GERMAN INSURANCE COMPANY of Freeport, Illinois, Appellant.

**Fire Insurance:** EXPIRATION OF POLICY: *Standard and solar time.* As there is no statute requiring standard railroad time to be used in determining the time of day referred to in contracts, under a policy expiring at 12 o'clock at noon of a certain day, the exact time of noon will be determined by the common, or solar time, unless it is shown that a different time was intended.

BURDEN ON INSURED AS TO. In an action on a policy expiring at 12 o'clock at noon of a certain day, the burden was on defendant to show, in avoidance of liability, that, because of a known and established custom obtaining at the place where the insurance was effected, standard railroad time was intended to be used in determining its expiration.

JURY QUESTION: *Custom.* An issue, in an action on a policy expiring at 12 o'clock at noon, as to whether, because of a known and established custom, standard railroad time was to be used in determining the exact time of the expiration, was properly left to the jury.

CUSTOM: *Evidence.* Where defendant, in an action on a policy expiring at 12 o'clock at noon of a certain day sought to avoid the policy on the ground that the property was burned after noon of the day the policy expired, computing the time in accordance with standard railroad time, and endeavored to show a custom calling for the use of such time in determining the exact time of expiration, it was necessary, not only to show the customary use of such time at the place where the property was insured, but that, by the custom of the place, 12 o'clock at noon meant 12 o'clock standard time.

**Action on Policy:** PREMATURITY: *Change of statute.* Acts Eighteenth General Assembly, chapter 211, section 3, prohibiting an action on a policy within ninety days after notice and proof of loss, pertaining as it does to the remedy and to a limited immunity from suit only, did not become a part of the contract of insurance, executed while it was in force, so as to preclude an action thereon within eighty days after the section was repealed by Code, section 1744, reducing the time to forty days.

**Harmless Error.** Where the charge correctly defines a word, the introduction of dictionaries, and the like, to prove its meaning is, if error, harmless.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

FRIDAY, DECEMBER 15, 1899.

ACTION on policy of insurance. The defendant appeals from judgment on verdict for the plaintiff. *Affirmed.*

*Sullivan & Sullivan* for appellant.

*D. W. Higbee* and *Copenheffer & Allen* for appellee.

LADD, J.—How shall the exact time of "noon" be determined, by "common" or "standard" time? At Creston, Iowa, the latter is seventeen and one-half minutes faster than the former, and, as the policy sued on covered the property destroyed "for one year from the 18th day of September. 1896, at twelve o'clock at noon, to the 18th day of September 1897, at twelve o'clock at noon," and the fire broke out on the last day at about 11:45 o'clock, A. M., common time, or at about two and one-half minutes after 12 o'clock standard time, the rights of the parties depend on the correct solution of this question. The trial court instructed the jury that: "The usual means of determining time of day, when such time is referred to in ordinary contracts, is by the standard of the meridian of the sun, or the sun time. The presumption is that common or solar time is the time intended by the parties, when reference to the

time of day is made in contracts, unless a different standard is shown to have been intended. It may be taken as a presumption from the use of the language, '12 o'clock at noon,' that the parties intended to mean 12 o'clock sun time, as that phrase is commonly understood." The exigencies of some lines of business may require the adoption of a system which shall definitely fix the same hour and minute at a particular instant at localities widely separated in longitude so that the delay of and occasional mistake in computation may be avoided. Indeed, experience has demonstrated the inestimable importance to railroad companies of giving direction to employes everywhere on their lines of road with absolute certainty as to time. Without such certainty, safety would be imperiled. And it may be that, because of the relation of transportation companies to the business interests of the community, and the inconveniences of two systems of computing time, it would be wise to use the "central standard time" throughout the state. But, in the absence of statutory enactment, we are not quite ready to concede that, for the mere convenience of these companies, nature's timepiece may be arbitrarily superseded. The apparent daily revolution of the celestial body, caused by the rotation of the earth has, from the remotest antiquity, been employed as a measure of time. The successive returns of the sun do not, it is true furnish a uniform measure of time, owing to the slightly variable velocity of the sun's motion and inclination of its orbit to the equator. Certain corrections are necessary, and therefore the imaginary mean sun has been introduced with a uniform velocity. The difference between the apparent or true solar time and the mean solar time, as shown by clocks and watches in ordinary use, is slight. These indicate the time as 12 o'clock when the sun is at meridian at any locality. The law and usage of the country have recognized this method of fixing time for generations, and it cannot be lightly set aside on the mere pretext that certain lines of business so demand. If this were not so, a purely artificial

standard of time, reckoned from the ninetieth meridian of longitude, might as well have been adopted establishing "central standard time" for the whole country, instead of dividing the map into four sections, with eastern, central, mountain and Pacific standard time. Thus, Saturday might in. part be turned into Sunday, and Sunday into Monday, and the period of the night when the civil day begins—midnight— made to depend on locality alone. The supreme court of Georgia, in deciding that a verdict was rendered on Sunday when standard time was somewhat slower than common time said: "It seems idle to waste words in saying that the standard of time fixed by persons in a certain line of business cannot be substituted at will, by persons in a certain locality, for the standard recognized by the statutes of the state, as well as the general law and usage of the country, especially when it is considered that such an arbitrary and artificial standard could as easily fix 5 o'clock for midnight as it could twenty minutes past 12, as was done in this case. Local customs cannot in this way change Sunday into Saturday. To expect courts of justice, officers of the law, and the public generally, especially that large class of the population who do not live in cities or at railroad stations, to go to the railroad for the time which is to guide them in the performance of their duties under the law, when they have in the heavens above them a standard by which to ascertain or regulate the time, or permit them at will to follow two standards of time, would be highly impracticable, and would be productive of great uncertainty and confusion in the administration of the law. Thus, the legality of elections might be made to depend upon the conflicting proof of local customs. for what might be considered a legal election in one precinct might be regarded as illegal in the next precinct, because of the time of opening and closing the polls, or the people of a precinct might differ among themselves as to this." *Henderson v. Reynolds,* 84 Ga. 159 (10 S. E. Rep. 734, 7 L. A. R. 32).

In *Searles v. Averhoff,* 28 Neb. 668 (44 N. W. Rep. 873), the supreme court of Nebraska, in holding that a defendant who appeared in justice court before 11 o'clock common time was not in default, though after 11 o'clock standard time, where, by the summons served, he was required to appear within one hour after "10 o'clock A. M.," held that: "The presumption is that common time is that relied upon where there is nothing to show that a different mode of measuring time has been in general use. Where, therefore, the return of a summons is to be made at an hour named, standard time, the summons should so state; otherwise, it will be presumed that common time was intended." There is an additional reason why the time here mentioned should be construed to mean sun time. "12 o'clock" seems to be definitely fixed by the words "at noon." Webster defines "noon" as the "middle of the day; midday; the time when the sun is in the meridian; twelve o'clock in the daytime." Similar definitions are given by other lexicographers. "Noon" has, in common parlance, a similar meaning, and refers to the middle of the day; not to a period after or before that. It is the beginning of the sidereal day used by the astronomers, as midnight marks the opening of the civil day. Time, when it concerns a legal duty, should be fixed with reference to a certain unvarying, uniform standard, and that standard in this state, is the meridian of the sun. This appears from different sections of our Code, uniformally fixing time by affixing "A. M." or "P. M." to the hours named, or mentioning "forenoon" or "afternoon" of the day. See Code, section 2448, subd. 9; Code, sections 2751-2754. 3514, and others. The introduction in evidence of scientific treatises and dictionaries was entirely without prejudice; as the court, in the instruction quoted, correctly defined what was meant by "at 12 o'clock at noon."

II. The court submitted to the jury whether, because of a known and established custom obtaining at Creston, the expression, "at 12 o'clock noon," was intended by the parties

to the contract to mean 12 o'clock standard time. While it was admitted that central standard time was in general use there by the railroad company, the schools, and business men generally, it does not appear but that the sun time was also used by other people of the city. As common or sun time was presumed to have been intended, the burden was upon the defendant to show to the contrary, and that issue was rightly left for the determination of the jury. But is it noon at 12 o'clock standard time? If so, just before the change from central to mountain time at McCook, Neb., and other places on the same degree of longitude, the sun reaches the meridian at about half past 12 o'clock. We are of opinion it was not only necessary to show the customary use of standard time, but that by custom of the place "at 12 o'clock at noon" meant at 12 o'clock standard time.

III.   Was this action prematurely brought? We think not. The proofs of loss were served October 16, 1897, and suit begun January 4, 1898,—within eighty days. That it could not have been maintained under section 3 of chapter 211 of the Acts of the Eighteenth General Assembly, prohibiting suit within ninety days after service of notice accompanied with proofs of loss, appears from *Quinn v. Insurance Co.*, 71 Iowa, 615. But section 1744 of the Code, which went into effect October 1, 1897, provides that "no action for such loss shall be begun within forty days after such notice and proofs of loss have been given to the company." This statute relates to the remedy, and, for this reason, did not become a part of the contract of insurance. *Vore v. Insurance Co.*, 76 Iowa, 548. True, the enactment of this statute repealed the act of the Eighteenth General Assembly (section 49, Code), but we do not think such repeal affected any right accruing or accrued. Section 51 of the Code saves rights, not remedies, from its operation, except where suit or proceeding has been had or commenced. *Wormley v. Hamburg*, 40 Iowa, 26; *Gray v. Iliff*, 30 Iowa.

195; *Brotherton v. Brotherton,* 41 Iowa, 112. No one has a vested right in a particular remedy, but the right may not be impaired under that section by so altering the remedy as to indirectly accomplish that object. *Brodt v. Rohkar,* 48 Iowa, 36; *Schmidt v. Holtz,* 44 Iowa, 446. Now, the rights of these parties became definitely fixed by the terms of the policy, the loss, and the proofs furnished. Nothing more was to be done. It was a mere question of when the remedy would be available. Shortening the time of the defendant's immunity from suit ninety to forty days did not affect any right it had. The period of the statute of limitations was not extended, as in the cases of *M'Donald v. Jackson,* 55 Iowa, 38, and *Wilson v. Tucker,* 105 Iowa, 57, but merely began to run 50 days sooner The opinion in the former may securely rest on the proposition that the new statute was a re-enactment of the law as it formerly stood, while in the latter the court held that depriving the plaintiff of the right to sue after his cause of action had accrued for a period of either five or fifteen years affected such a right as was contemplated by section 50 of the Code of 1873. See authorities collected in 13 Am. & Eng. Enc. Law, 696 *et seq.*

What has been said disposes of other matters argued. and the judgment is AFFIRMED.

GRANGER, J., not sitting.