LOUIS K. LIGGETT COMPANY *v.* BALDRIDGE, ATTORNEY GENERAL OF PENNSYLVANIA, ET AL.

No. 34. Argued October 8, 1928.—Decided November 19, 1928.

*Messrs. Owen J. Roberts* and *Roy M. Sterne,* with whom *Mr. George C. Chandler* was on the brief, for appellant.

*Mr. Paul C. Wagner,* Deputy Attorney General of Pennsylvania, with whom *Mr. Thomas J. Baldridge,* Attorney General, was on the brief, for appellees.

108

*Mr. Sol M. Stroock, as amicus curiae,* filed a brief on behalf of the Whelan Drug Company, by special leave of Court.

*Messrs. Charles H. Sachs* and *Louis Caplan,* as *amici curiae,* filed a brief on behalf of the May Drug Company, by special leave of Court.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This appeal brings here for consideration a challenge to the constitutionality of an act of the Pennsylvania legislature approved May 13, 1927, Penna. Stats., Supp. 1928, § 9377a-1, 9377a-2, a copy of which will be found in the margin.* The act provides that every pharmacy or drug store shall be owned only by a licensed pharmacist, and, in the case of corporations, associations and co-

_____

* "Section 1. Every pharmacy or drug store shall be owned only by a licensed pharmacist, and no corporation, association, or copartnership shall own a pharmacy or drug store, unless all the partners or members thereof are licensed pharmacists; except that any corporation organized and existing under the laws of the Commonwealth or of any other state of the United States, and authorized to do business in the Commonwealth, and empowered by its charter to own and conduct pharmacies or drug stores, and any association or copartnership which, at the time of the passage of this act, still owns and conducts a registered pharmacy or pharmacies or a drug store or drug stores in the Commonwealth, may continue to own and conduct the same; but no other or additional pharmacies or drug stores shall be established, owned, or conducted by such corporation, association, or copartnership, unless all the members or partners thereof are registered pharmacists; but any such corporation, association, or copartnership, which shall not continue to own at least one of the pharmacies or drug stores theretofore owned by it, or ceases to be actively engaged in the conduct of a pharmacy, shall not be permitted thereafter to own a pharmacy or a drug store, unless all of its partners or members are registered pharmacists; and except that any person, not a licensed pharmacist, who, at the time of the passage of this

partnerships, requires that all the partners or members thereof shall be licensed pharmacists, with the exception that such corporations as are already organized and existing and duly authorized and empowered to do business, in the state and own and conduct drug stores or pharmacies, and associations and partnerships, which, at the time of the passage of the act, still own and conduct drug stores or pharmacies, may continue to own and conduct the same.

The appellant is a Massachusetts corporation authorized to do business in Pennsylvania. At the time of the passage of the act, appellant was empowered to own and conduct and owned and thereafter continued to own and operate a number of pharmacies or drug stores at various places within the latter state. After the passage of the act, appellant purchased and took possession of two addi-

act, owns a pharmacy or a drug store in the Commonwealth, may continue to own and conduct the same, but shall not establish or own any additional pharmacy or drug store, or if he or she ceases to operate such pharmacy or drug store, shall not thereafter own a pharmacy or drug store, unless he or she be a registered pharmacist; and except that the administrator, executor, or trustee of the estate of any deceased owner of a registered pharmacy or drug store, may continue to own and conduct such pharmacy or drug store during the period necessary for the settlement of the estate: Provided, That nothing in this section shall be construed to prevent or affect the ownership, by other than a registered pharmacist, of a store or stores wherein the sale or manufacture of drugs or medicines is limited to proprietary medicines and commonly used household drugs, provided such commonly used household drugs are offered for sale or sold in packages which have been put up ready for sale to consumers by pharmacists, manufacturing pharmacists, wholesale grocers, or wholesale druggists.

"Section 2. Any person, copartnership, or corporation, violating the provisions of this act, shall be guilty of a misdemeanor and, upon conviction thereof, shall be sentenced to pay a fine of not more than one hundred dollars. Each day any such pharmacy is owned contrary to the provisions of this act shall be considered a separate offense."

tional drug stores in that state and carried on and continues and intends to continue to carry on a retail drug business therein under the title of " drug store " or " pharmacy," including the compounding, dispensing, preparation and sale at retail of drugs, medicines, etc. The business was and is carried on through pharmacists employed by appellant and duly registered in accordance with the statutes of the state. All of the members [stockholders] of the appellant corporation are not registered pharmacists, and, in accordance with the provisions of the act, the Pennsylvania State Board of Pharmacy has refused to grant appellant a permit to carry on the business. It further appears that the state Attorney General and the District Attorney of the proper county have threatened and intend to and will prosecute appellant for its violation of the act, the penalties for which are severe and cumulative. Suit was brought to enjoin these officers from putting into effect their threats, upon the ground that the act in question contravenes the due process and equal protection clauses of the Fourteenth Amendment. It is clear from the pleadings and the record, and it is conceded, that if the act be unconstitutional as claimed, appellant is entitled to the relief prayed. *Terrace* v. *Thompson*, 263 U. S. 197, 215; *Ex parte Young*, 209 U. S. 123.

The court below, composed of three judges, heard the case upon the pleadings, affidavits and an agreed statement of facts, and rendered a decree denying a preliminary injunction and, upon the agreed submission of the case, a final decree dismissing the bill for want of equity. 22 F. (2d) 993. The statute was held constitutional upon the ground that there was a substantial relation to the public interest in the ownership of a drug store where prescriptions were compounded. In support of this conclusion, the court said that medicines must be in the store before they can be dispensed; that what is there is dic-

tated not by the judgment of the pharmacist but by those who have the financial control of the business; that the legislature may have thought that a corporate owner in purchasing drugs might give greater regard to price than to quality, and that if such was the thought of the legislature the court would not undertake to say that it was without a valid connection with the public interest and so unreasonable as to render the statute invalid.

That appellant's business is a property right, *Duplex Co. v. Deering*, 254 U. S. 443, 465; *Truax v. Corrigan*, 257 U. S. 312, 327, and as such entitled to protection against state legislation in contravention of the federal Constitution, is, of course, clear. That a corporation is a "person" within the meaning of the due process and equal protection clauses of the Fourteenth Amendment, and that a foreign corporation permitted to do business in a state may not be subjected to state statutes in conflict with the federal Constitution, is equally well settled. *Kentucky Co. v. Paramount Exch.,* 262 U. S. 544, 550; *Power Co. v. Saunders*, 274 U. S. 490, 493, 496–497; *Frost Trucking Co. v. R. R. Comm'n*, 271 U. S. 583, 594 *et seq.* And, unless justified as a valid exercise of the police power, the act assailed must be declared unconstitutional because the enforcement thereof will deprive appellant of its property without due process of law.

The act is sought to be sustained specifically upon the ground that it is reasonably calculated to promote the public health; and the determination we are called upon to make is whether the act has a real and substantial relation to that end or is a clear and arbitrary invasion of appellant's property rights guaranteed by the Constitution. See *Adair v. United States*, 208 U. S. 161, 173–174; *Mugler v. Kansas*, 123 U. S. 623, 661. The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears

112

a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare. Here the pertinent question is: What is the effect of mere ownership of a drug store in respect of the public health?

A state undoubtedly may regulate the prescription, compounding of prescriptions, purchase and sale of medicines, by appropriate legislation to the extent reasonably necessary to protect the public health. And this the Pennsylvania legislature sought to do by various statutory provisions in force long before the enactment of the statute under review. Briefly stated, these provisions are: No one but a licensed physician may practice medicine or prescribe remedies for sickness; [1] no one but a registered pharmacist lawfully may have charge of a drug store; [2] every drug store must itself be registered, and this can only be done where the management is in charge of a registered pharmacist; [3] stringent provision is made to prevent the possession or sale of any impure drug or any below the standard, strength, quality and purity as determined by the recognized pharmacopoeia of the United States; [4] none but a registered pharmacist is permitted to compound physician's prescriptions; [5] and, finally, the supervision of the foregoing matters and the enforcement of the laws in respect thereof are in the hands of the state Board of Pharmacy, which is given broad powers for these purposes.

It, therefore, will be seen that without violating laws, the validity of which is conceded, the owner of a drug store, whether a registered pharmacist or not, cannot purchase or dispense impure or inferior medicines; he cannot,

[1] Pa. St. 1920, § 16779.
[2] Pa. St. 1920, §§ 9323, 9327.
[3] Pa. St. Supp. 1928, § 9329a–2.
[4] Pa. St. 1920, § 9337; Pa. St. Supp. 1928, § 9339.
[5] Pa. St. 1920, §§ 9317, 9323.

unless he be a licensed physician, prescribe for the sick; he cannot, unless he be a registered pharmacist, have charge of a drug store or compound a prescription. Thus, it would seem, every point at which the public health is likely to be injuriously affected by the act of the owner in buying, compounding, or selling drugs and medicines is amply safeguarded.

The act under review does not deal with any of the things covered by the prior statutes above enumerated. It deals in terms only with *ownership*. It plainly forbids the exercise of an ordinary property right and, on its face, denies what the Constitution guarantees. A state cannot, " under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them." *Burns Baking Co.* v. *Bryan,* 264 U. S. 504, 513. See also *Meyer* v. *Nebraska,* 262 U. S. 390, 399–400; *Norfolk Ry.* v. *Public Service Comm'n,* 265 U. S. 70, 74; *Pierce* v. *Society of Sisters,* 268 U. S. 510, 534–535; *Weaver* v. *Palmer Bros. Co.,* 270 U. S. 402, 412–415; *Fairmont Co.* v. *Minncsota,* 274 U. S. 1, 9–11.

In the light of the various requirements of the Pennsylvania statutes, it is made clear, if it were otherwise doubtful, that mere stock ownership in a corporation, owning and operating a drug store, can have no real or substantial relation to the public health; and that the act in question creates an unreasonable and unnecessary restriction upon private business. No facts are presented by the record, and, so far as appears, none were presented to the legislature which enacted the statute, that properly could give rise to a different conclusion. It is a matter of public notoriety that chain drug stores in great numbers, owned and operated by corporations, are to be found throughout the United States. They have been in operation for many years. We take judicial notice of the fact

114

that the stock in these corporations is bought and sold upon the various stock exchanges of the country and, in the nature of things, must be held and owned to a large extent by persons who are not registered pharmacists. If detriment to the public health thereby has resulted or is threatened, some evidence of it ought to be forthcoming. None has been produced, and, so far as we are informed, either by the record or outside of it, none exists. The claim, that mere ownership of a drug store by one not a pharmacist bears a reasonable relation to the public health, finally rests upon conjecture, unsupported by anything of substance. This is not enough; and it becomes our duty to declare the act assailed to be unconstitutional as in contravention of the due process clause of the Fourteenth Amendment.

*Decree reversed.*

HOLMES, J., dissenting.

A standing criticism of the use of corporations in business is that it causes such business to be owned by people who do not know anything about it. Argument has not been supposed to be necessary in order to show that the divorce between the power of control and knowledge is an evil. The selling of drugs and poisons calls for knowledge in a high degree, and Pennsylvania after enacting a series of other safeguards has provided that in that matter the divorce shall not be allowed. Of course, notwithstanding the requirement that in corporations hereafter formed all the stockholders shall be licensed pharmacists, it still would be possible for a stockholder to content himself with drawing dividends and to take no hand in the company's affairs. But obviously he would be more likely to observe the business with an intelligent eye than a casual investor who looked only to the standing of the

stock in the market. The Constitution does not make it a condition of preventive legislation that it should work a perfect cure. It is enough if the questioned act has a manifest tendency to cure or at least to make the evil less. It has been recognized by the professions, by statutes and by decisions that a corporation offering professional services is not placed beyond legislative control by the fact that all the services in question are rendered by qualified members of the profession. See *People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366; *Tucker* v. *New York State Board of Pharmacy*, 217 N. Y. Supp. 217, 220. *Matter of Co-operative Law Co.*, 198 N. Y. 479. *People* v. *Merchants Protective Corporation*, 189 Cal. 531. *New Jersey Photo Engraving Co.* v. *Carl Schonert & Sons*, 95 N. J. Eq. 12. *Hodgen* v. *Commonwealth*, 142 Ky. 722.

But for decisions to which I bow I should not think any conciliatory phrase necessary to justify what seems to me one of the incidents of legislative power. I think however that the police power as that term has been defined and explained clearly extends to a law like this, whatever I may think of its wisdom, and that the decree should be affirmed.

Of course the appellant cannot complain of the exception in its favor that allows it to continue to own and conduct the drug stores that it now owns. The Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and those of a later time. *Sperry & Hutchinson Co.* v. *Rhodes*, 220 U. S. 502, 505.

Mr. Justice Brandeis joins in this opinion.