STATE, Plaintiff in error, vs. BADOLATI, Defendant in error.

*October 16—November 10, 1942.*

For the plaintiff in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

No brief or appearance for the defendant in error.

WICKHEM, J.   This appeal poses a very narrow question of some difficulty.   Sec. 176.06, Stats., provides that no premises for which a "Class B" retail license shall have been issued shall be permitted to remain open for the sale of liquor between the hours of 1 a. m. and 8 a. m.   Defendant in error remained open until 12:55 a. m., central standard time, as that time was established prior to an act of congress hereinafter referred to.   He remained open until 1:55 a. m. according to what is popularly known as "central war time," established by this act of congress.

The question is whether upon these facts there has been a violation of sec. 176.06, Stats.

Sec. 175.09 (1), Stats., provides as follows:

"*Standard time.* (1) The standard of time in this state shall be the solar time of the ninetieth meridian west of Greenwich, commonly known as central time, and no department of the state government, and no county, city, town or village shall employ any other time, or adopt any ordinance or order providing for the use of any other than the standard of time."

Other provisions of sec. 175.09, Stats., prohibit displaying or using of any other than the standard time and provide penalties.

The act of January 20, 1942, ch. 7, 2d Session, Public Law, 403, 77th Cong., S. 2160, provided in part as follows:

"Beginning at 2 o'clock antemeridian of the twentieth day after the date of enactment of this act, the standard time of each zone established pursuant to the act entitled 'An act to save daylight and to provide standard time for the United States,' approved March 19, 1918, as amended, shall be advanced one hour." Provided that this act should cease to be in effect six months after the termination of the present war.

The act of March 19, 1918, ch. 24, secs. 1, 2, and 4, 15 USCA, secs. 261, 262, 263, provides in substance that for the purpose of establishing the standard time of the United States the continental United States is divided into five zones. It is provided that the standard time of the first zone shall be based upon the mean astronomical time of the seventy-fifth degree of longitude west from Greenwich; that of the second zone on the ninetieth degree. The bases of the other zones are similarly set forth. It is provided that the limitations of each zone are to be defined by an order of the interstate commerce commission, having regard for the convenience of commerce and for the junction and division points of interstate common carriers engaged in interstate commerce. Sec. 263 provides that the standard time of the second zone, which includes Wisconsin, shall be known and designated as United States central standard time.

Defendant in error has filed no brief, but his position is quite evidently that closing hours prescribed by sec. 176.06,

Stats., for premises operating under "Class B" licenses, and not stating any standard of time, must be governed by sec. 175.09, which provides that standard time shall be the solar time of the ninetieth meridian east of Greenwich, commonly known as central time, in view especially of the fact that both secs. 176.06 and 175.09 antedate the act of congress of 1942, fixing a modified central standard time for the duration of the war.

Historically speaking, the method of measuring time in this country was the mean solar time of the particular place involved. It had long been known that actual solar time, that is the time based on the apparent actual movement of the sun over any particular meridian varied from day to day, and was impractical to use as a standard, after the abandonment of sundials, since watches and clocks had constantly to be reset. The mean solar time was based upon the apparent movement of an imaginary constant sun over the meridian. This gave a satisfactory time standard for a particular community, but was increasingly unsatisfactory as means of transportation and communication improved, because of the wide variety of time standards in communities thrown into close relation by these improvements.

In 1883 railroad companies entered into an agreement to maintain their schedules on the basis of four standard time zones, approximately similar to the time zones now in use. This, of course, would mean that the standard railroad time for a place on the boundaries of a zone would vary about half hour from the mean solar time of that place. Following the lead of the railroads, people in all walks of life adopted generally the time standards of the railroad, but a great many difficulties came up in court cases. For example, in *Searles v. Averhoff*, 28 Neb. 668, 44 N. W. 872, a justice court summons was returnable at 10 a. m. and at 11 a. m., standard railroad time, the justice gave a default judgment. Before 11 a. m., mean solar time, defendant appeared, but the justice

refused to reopen the case. Upon appeal, this was held to be error, and that if the justice meant to have his process returned at 10 a. m., standard railroad time, he should so state. In the absence of this, it would be assumed that solar time was meant. Other cases holding generally to the same effect were *Walker v. Terrill* (Tex. Civ. App.), 189 S. W. 75, and *Henderson v. Reynolds*, 84 Ga. 159, 10 S. E. 734. In Iowa and Kentucky there was a variance in the holdings. In Iowa it was held in *Jones v. German Ins. Co.* 110 Iowa, 75, 81 N. W. 188, that the burden was upon persons claiming the benefit of it to prove that standard time was customarily used in the vicinity and customarily meant when an hour was referred to in the contract. In *Rochester German Ins. Co. v. Peaslee-Gaulbert Co.* 27 Ky. Law, 1155, 87 S. W. 1115, the court took judicial notice of the usage of regulating affairs according to standard time, and put the presumption in favor of standard time rather than of sun time. Other diversities of holding need not be canvassed, because the purpose of discussing this matter is simply to show that there exisited a considerable amount of undesirable confusion. It was to remove this confusion that the act of congress of 1918 was enacted in the interests of interstate trade and commerce. Sec. 175.09 (1), Stats., had the same purpose. While sec. 175. 09 (1) refers to the solar time of the ninetieth meridian, it is quite plain that it was not enacted to establish sun time as the standard time for this state. Considering the statute as a whole, it plainly establishes standard central time as the standard time for this state. It indicates this very plainly by the parenthetical statement "commonly known as central time." There was at the time of its enactment no central time except that established by the act of congress of 1918, and this was the standard time of the second zone based on the mean astronomical time of the ninetieth meridian west of Greenwich. Wisconsin was, and is, in that zone and this was the standard established by sec. 176.06—not mean solar time. This being true, it is

clear to us that the state of Wisconsin has geared its time to central standard time as established by congress, and that as congress changes central standard time, our statutory standard of time also changes. We now have a central standard time that is one hour earlier than it was prior to the act of 1942. It would seem clear that this is the central standard time by which, in accordance with our own statutes, all time in Wisconsin is to be estimated.

Such a construction conforms to the evident purpose of the legislature to establish a single standard of time which would be in conformity to the standard upon which interstate commerce was based, and to avoid the confusion which has heretofore been adverted to. To adopt any other view would produce the very confusion that the legislature sought to avoid, and this, at a time when confusion will be costly and can be fatal to every interest of the state and nation.

*By the Court.*—Judgment and order are reversed, and cause remanded for further proceedings according to law.