# City of Louisville v. Louisville Livestock Exchange, Inc.

### June 4, 1946.

Gilbert Burnett and Lawrence G. Duncan for appellant.

Stanley B. Mayer, Eldon S. Dummit, Attorney General, and M. B. Holifield, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The sole question for determination is whether a city of the Commonwealth may adopt daylight-saving time, while the State at large remains on standard time. On April 23, 1941, the Board of Aldermen of the City of Louisville, which is in the Central Time belt, enacted an ordinance declaring that the standard of time within the City of Louisville, between the last Sunday in April and the last Sunday in September in each year, shall be the Standard Central Time advanced one hour. The General Assembly of 1942 adopted an act, chapter 95, now compiled as KRS 39.290, which reads:

"An Act adopting and putting into effect daylight saving time throughout the Commonwealth of Kentucky by advancing standard time one hour to run contemporaneously and for a period of time provided by the Federal Daylight Saving Act, and declaring an emergency.

"Whereas, the National Government has adopted daylight saving time in regard to interstate commerce and Federal offices, agencies and works throughout the United States and,

"Whereas, it is desirable to avoid confusion and conflict that this Commonwealth and its subdivisions and agencies in its various transactions be in accord with the Federal Government in this matter.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"That the standard time as heretofore fixed and existing in the United States pursuant to Act of Congress and prior to the recent adoption of daylight saving time during the period of the National emergency be advanced by one hour, which time so advanced shall apply to and govern all laws, regulations and rules relating to the time or performance of any Act by any officer or department of the Commonwealth, or of any county, city or subdivision or agency thereof, or relating to the time that any right shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the Commonwealth, and in all the public schools and institutions of the Commonwealth and on the public works of the Commonwealth of any county, city or district thereof, or in all contracts or choses in action made or to be performed in the Commonwealth.

"That said time adopted above shall continue so long as the Federal Government continues its adoption of the change of time and shall cease when the Federal Government abandons and discontinues the use of daylight saving time and reverts to standard time and so promulgates.

"That there is present pressing necessity of putting into effect this change of time to conform with the Federal Government and an emergency is now declared and this Act shall go into effect at midnight following its final passage and approval by the Governor."

In the year 1918, the Congress of the United States passed the Federal Standard Time Act, by the terms of which the continental United States was divided into five time zones, and standards of time were adopted and made applicable to interstate transportation, offices and departments of the Federal Government, and to all acts done by any person under the Federal statutes, orders, rules, and regulations. 15 U. S. C. A. sec. 261 et seq. This Act originally contained a provision for daylight-

saving time during World War I, but that provision of the Act was repealed August 20, 1919, 41 Stat. 280, 15 U. S. C. A. sec. 264 note. On January 20, 1942, the Congress re-established daylight-saving time as a temporary war measure during World War 2, 15 U. S. C. A. sec. 261 et seq.; but on September 25, 1945, adopted an Act terminating daylight-saving time, thus returning the United States to standard time in respect to interstate transportation, Government agencies, and all persons acting under Federal statutes and regulations, 15 U. S. C. A. sec. 261 et seq. The authority of Congress to enter the field of establishing standards of time is contained in Article I, Section 8 of the Constitution of the United States. But it will be noted that it has chosen to occupy only a portion of the field, i. e., interstate transportation, governmental agencies, and persons acting under the statutes and regulations of the Federal Government. In Massachusetts State Grange v. Benton, Attorney General of Commonwealth of Massachusetts, 272 U. S. 525, 47 S. Ct. 189, 71 L. Ed. 387, the Supreme Court of the United States affirmed the Court, which held that the power to adopt the standards of time in fields which have not been entered by the Federal Government remained in the various states within their respective jurisdictions. The District Court's decision is reported under the same style in 10 F. 2d 515.

The facts and principles above stated are conceded by both parties to this action. But it is contended by the City of Louisville that the State has delegated to it the right to fix the standard of time within its jurisdiction under the general power to govern its people; whereas, it is contended by appellee that, even had the State delegated this power to the City (but which appellee contends it did not), such power was withdrawn by the Act of 1942 copied at length above. The City concedes that if its ordinance is in conflict with the Act of 1942, it may not be enforced. In recent years the functions of the Federal Government and those of the State Government have become closely interrelated and intermingled; and many Federal and State functions, for example the Social Security programs, are jointly administered. Until the passage of the Act of 1942, the Legislature never formally had established a standard of time for Kentucky. But this Act geared Kentucky to the standard adopted by Congress; State of Wisconsin v. Badolati,

241 Wis. 496, 6 N. W. 2d 220, 143 A. L. R. 1234, 1237; and by providing that daylight-saving time should cease when the Federal Government brought about its discontinuance, the Legislature intended to keep in gear with the Federal Government in the measure and standard of time. We will not inquire into the correctness of the Legislature's determination that confusion is created when a given territory, completely surrounded by standard time, undertakes to operate its business under daylight-saving time. Certainly, in the language of the Act, if "it is desirable to avoid confusion and conflict that this Commonwealth and its subdivisions and agencies in its various transactions be in accord with the Federal Government in this matter," in time of war, so must it be in time of peace; and, in the same tenor, it would be desirable that the cities of the Commonwealth should be geared with the rest of the State in standard of time. The Act does not say that *its provisions* shall cease to be effective upon the termination of daylight-saving time by the Congress; on the contrary, it says that *daylight-saving time* shall cease, which can mean nothing if not that the Commonwealth, its counties, municipalities, and townships henceforth shall be governed by standard time.

This being the view of the majority of the Court, and the Chancellor having so decreed, the judgment is affirmed.

Chief Justice Rees dissenting.

The majority opinion is rested entirely upon a construction of the 1942 Act of the Legislature with which I cannot agree. A legislative intent which I believe is unauthorized is read into the Act. The Act was adopted by the Legislature for the sole purpose of conforming with Federal legislation on the subject, and, like the Federal Act, was a war emergency measure. Direct and positive language was used to adopt daylight saving time during the war, and if the members of the Legislature intended to establish a public policy on the subject for the entire State for all future time surely they would have used language just as direct and positive. The whole tenor of the preamble and the body of the Act is that the Act shall be effective contemporaneously with the Federal Act. The majority opinion places much

stress on the word "cease" in the Act, but the provision that daylight saving time should cease when the Federal Government reverted to standard time was but a repetition of the Legislature's intention that the Act should run contemporaneously with the Federal Act. I find nothing in the Act warranting the construction that the Legislature intended it to be permanent legislation prohibiting municipalities and other subdivisions of the State from adopting daylight saving ordinances and thus establishing as the public policy of the State that standard time alone shall be used. It may be, as suggested in the majority opinion, that it is just as desirable to be in accord in this matter with the Federal Government in time of peace as in time of war, but this does not justify the strained construction placed upon the 1942 Act. I am confident that no member of the Legislature believed that he was voting for permanent legislation establishing the public policy of the State on the subject for the future. When the Legislature undertakes to declare the public policy of the State on a subject, it does not do so in the backhanded manner attributed to it by the majority.

Judge Cammack concurs in this dissent.