ALBERT H. PHILLIPS

*v.*

STATE OF TENNESSEE

(*Nashville,* December Term, 1956.)

Opinion filed July 29, 1957.

404

K. Harlan Dodson, Jr., and John Jay Hooker, Jr., Nashville, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

Chapter 260 of the Public Acts of 1957 requires the observation in Tennessee of "only standard time" as fixed for Tennessee by the United States Interstate Commerce Commission. The statute forbids every governmental entity from adopting, permanently or temporarily, any other standard of time. It then provides this:

"No person, firm, partnership, corporation or other entity operating or maintaining a place of business of whatsoever kind or nature shall employ, display or maintain or use any other standard of time in connec-

tion with such place of business than standard time as prescribed by this section."

This is a declaration of the public policy of the State by means of the exercise of the police power of the State, *State ex rel. Loser v. National Optical Stores Co.,* 189 Tenn. 433, 447, 225 S.W.2d 263, upon a quite controversial subject.

Mr. Phillips did, in connection with the operation of his business located on a busy street in Nashville, deliberately violate this statute in order to bring about an adjudication as to its constitutionality, he being of the opinion that it is an unauthorized trespass upon his liberties.

The Trial Court sustained the Act. Phillips has appealed. His insistence is that it violates Section 8 of Articles 1 and 11, respectively, of the Tennessee Constitution, and the 14th amendment to the Federal Constitution in that it is an arbitrary exercise, so he says, of the police power of the State.

In the course of the discussion of the question made, emphasis will be placed upon certain words appearing in quotations. In each instance such emphasis is supplied.

A statute enacted by the Connecticut Legislature in 1923 provided this:

"No person, firm or corporation, organization or association, shall wilfully display in or on any public building or on any street, avenue or public highway any time-measuring instrument or device, which is calculated or intended to furnish time to the general pub-

lic, set or running so as to indicate intentionally, or indicating intentionally, any time other than the standard of time as defined by chapter 37 of the Public Acts of 1921.'' Pub.Acts 1923, c. 231.

The Supreme Court of Connecticut in *State v. Bassett,* 100 Conn. 430, 123 A. 842, 843, 37 A.L.R. 131, noted that: —''The purpose of this legislation was to prevent *such inconvenience and confusion* to the public as might arise from the display of clocks on public buildings and highways indicating the time of day as otherwise than the standard time established by law, and prescribed for conducting the government of the state and municipalities and which was in use upon railways.'' That Court sustained the Act as a valid exercise of the police power of the State with the statement that *''legislation in the interest of public convenience and public welfare also comes under the police power''* of the State.

In an annotation following the report there is a disagreement with the decision. The disagreement was apparently on the theory that the ''legitimate limit'' of the police powers is ''legislation in the interests of public safety, morals and welfare.''

The Connecticut case, supra, is the only decision on the point which any one connected with this case has been able to find. There are some expressions, however, by Courts and legislative bodies indicating that, in the opinion of such governmental entities, *''confusion is created* when a given territory completely surrounded by standard time undertakes to operate its business under Daylight Saving Time'', *Smith v. City of Pittsburgh,* 30 Pa. Dist. R. 454.

The Wisconsin case of *State v. Badolati,* 241 Wis. 496, 6 N.W.2d 220, 221, 143 A.L.R. 1234, after noting that "historically speaking, the method of measuring time in this country was the mean solar time of the particular place involved", then observed that:—"This gave a satisfactory time standard for a particular community, *but was increasingly unsatisfactory as means of transportation and communication improved, because of the wide variety of time standards in communities thrown into close relation by these improvements."*

This Wisconsin case notes that as far back as 1883 the railroads of this country agreed to maintain their schedules on the basis of four standard time zones. The result was that standard railroad time on the boundaries of a zone varied about half an hour from the mean solar time of that place. Then, "following the lead of the railroads, people in all walks of life adopted generally the time standards of the railroad, *but a great many difficulties came up in Court cases."* The decision then gives examples of the confusion in legal matters resulting from this variance between railroad time and solar time. The decision then opines that *"it was to remove this confusion* that the Act of Congress of 1918 was enacted *in the interests of interstate trade and commerce."*

The congressional act referred to is 15 U.S.C.A. sec. 261 et seq. Its purpose was to establish standard time over the United States and Alaska by dividing the same into five time zones with the standard time of the first zone based upon "the mean astronomical time of the seventy-fifth degree of longitude west from Greenwich". Each fifteen degrees of longitude from the first zone is the commencement of a new zone wherein the standard

time is one hour later. It was provided by this statute that the interstate commerce commission define the precise limits of each zone—*"having regard for the convenience of commerce"*, etc.

During the recent war emergency Congress enacted a Federal Daylight Saving Time Statute. The State of Kentucky enacted a statute changing its official time so as to be in conformity with the time fixed by the Federal Statute. It was recited in the face of this Kentucky Statute that its enactment is *"to avoid confusion and conflict."* See *City of Louisville v. Louisville Livestock Exchange, Inc.,* 302 Ky. 536, 195 S.W.2d 76, 77.

Thus, it seems to be established with fair conclusiveness that courts and legislative bodies, when dealing with the problem, have recognized it to be a fact that inconvenience, confusion, and conflict arise when it is sought in one and the same community to operate business upon more than a single standard of time; or for different standards of time in separate communities thrown into close business relations. Certainly it cannot be said that common experience rejects this declaration of fact.

 Thus, in so far as concerns this case, it must be accepted as a fact that the operation of the many and various public businesses, private and governmental, in any given community of the State upon more than a single standard of time, or upon a standard different from that of another community, has been recognized by our legislature as resulting, or so tending, in inconvenience, confusion and conflict among the people affected; to-wit, the public. Obviously, the purpose of the Legislature in the enactment of Chapter 260 was to pre-

vent such a situation, with its resulting economic losses, disturbance of orderly procedure in business, etc. The question posed by this suit is whether such action is beyond the permissible limits of the police power of the State.

This police power of the State embraces all matters reasonably "deemed necessary or expedient for the safety, health, morals, *comfort and welfare of its people, Harbison v. Knoxville Iron Co.,* 103 Tenn. 421, 441-442, 53 S.W. 995, 960, 56 L.R.A. 316, including *"the domestic peace, the private happiness or public welfare* of the people." *Lonas v. State,* 50 Tenn. 287, 310. It is *not* limited to regulations "in the interest of public health, safety and morals". *Nashville, C. & St. L. Railroad v. Walters,* 294 U.S. 405, 429, 55 S.Ct. 486, 495, 79 L.Ed. 949, 963.

Since the operation of the many and various public businesses, private and governmental, in a given community of the State upon more than a single standard of time, or upon a standard different from that of another community, does result, or so tends, in inconvenience, confusion and conflict, its regulation or prohibition fall, in the opinion of the majority of this Court, within the above defined police power of the State as defined by the decisions of this Court through the years, as we interpret those decisions. Nor do we find in *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A. 1916F, 177, read as a whole, an intention to narrow these limits. Read 125 Tenn. at page 566, 145 S.W. at page 182.

So it is that the statute under attack here, in so far as the police power of the State is concerned, is a valid en-

actment unless it be, as insisted in behalf of Mr. Phillips, that the particular provisions of this statute amount to an arbitrary exercise of such power.

■ The Court is limited in its consideration of this insistence to a determination of whether this statute has any real tendency to carry into effect the purposes designed. *State ex rel. Loser v. National Optical Stores Co., supra.*

The statute prohibits (1) the maintenance of business on any other standard of time than that prescribed by this statute, and (2) the public display by any time-measuring instrument of any other standard of time in connection therewith. These prohibitions, *ipso facto,* if respected, eliminate the inconvenience, confusion and conflicts which the Legislature reasonably contemplated might otherwise follow the maintenance of more than one standard. And that was the purpose of the statute. It does, therefore, have a "real tendency to carry into effect the purposes designed".

But Phillips says that, conceding all hereinabove held, the Act is bad because it is discriminatory class legislation in that it limits those who come within the class specified to persons, natural or artificial, owning or maintaining a place of business, though there is, he says, no "valid reason why non-standard time would be any more detrimental to the public good in the use of non-business citizens than in the use of business citizens."

■ If any possible reason can be conceived to justify a classification, Courts must uphold it. And if the reasonableness of the classification be "fairly debatable", it must be upheld. *Davidson County v. Rogers,* 184 Tenn.

327, 333, 198 S.W.2d 812. Any other rule within the premises would be an infringement by the Court upon the prerogatives of the Legislature.

It is reasonable to conclude that there is little, if any, likelihood of resulting public confusion from the fact that an individual, in the performance of personal, non-business affairs, makes believe that the clock time of such performance is different from what it actually is. The public is not concerned as to the time of his doing such things, and knows nothing about it. The possibility, or opportunity, of such individual publicly displaying a time-measuring instrument telling the general public about this is so remote as to be entirely unimportant. And certainly the time of his performance of these personal non-business matters, domestic or pleasure, in no way deceives the public as to the time a business transaction is to be had.

The above reasonably possible appraisal of the difference in effect of the action of persons as to business affairs, on the one hand, and of persons in personal non-business affairs, on the other hand, seems to justify the classification, or, at least, from the viewpoint most favorable to Mr. Phillips, the reasonableness of the classification is "fairly debatable". So, in any view of the question, the duty of the Court is to uphold the classification.

Finally, it is insisted that this statute infringes upon Mr. Phillips' right of freedom of speech as guaranteed by our Constitution.

It has hereinbefore been held that the Legislature was in the exercise of a legal right in the enactment of

this statute prohibiting the use of any standard of time in business operations and in governmental affairs other than the standard of time adopted by the State. The Act further prohibits the public display of any standard of time in connection with the operation of such business than that prescribed by this statute. We think, therefore, that this contention must be rejected under the holding of this Court in *Hooten v. Carson*, 186 Tenn. 282, 290-291, 209 S.W.2d 273, 276, as follows:

"No question of denial of freedom of speech arises where the effect of the prohibition is to deny one the privilege of publicizing his violation of a valid statute. *Fox v. State of Washington*, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573."

Judgment affirmed with Mr. Chief Justice Neil dissenting.

NEIL, CHIEF JUSTICE, (dissenting).

With due respect to the views expressed in the opinion of Mr. Justice Tomlinson, holding that the statute in question is constitutional, I must disagree.

I fully abide by the universally accepted rule that in passing upon the constitutionality of any Act of the Legislature we must resolve all doubts in its favor. We never consider if it is wise or unwise legislation.

The authority of the Legislature to pass this statute is not dependent upon any provision of the Constitution of Tennessee. The police power of the State is an inherent attribute of sovereignty and derives from the principle that such statutes are essential to the maintenance of public morals, public safety and public health.

As I understand the contention of the State the validity of the statute involved in the present controversy should be upheld on the theory that it is in the interest of public morals, public health and public safety, as well as the promotion of the general welfare. I cannot conceive that it bears the slightest relationship to these purposes.

T.C.A. sec. 4-113, sub-section (2) as amended, provides: "No person, firm, partnership, corporation or other entity operating or maintaining a place of business of whatsoever kind or nature shall employ, display or maintain or use any other standard of time in connection with such place of business than standard time as prescribed by this section." It is an express prohibition against any person from voluntarily observing what is commonly known as "Daylight Saving Time".

It is a settled rule of statutory construction in this State that the exercise of the police power of the State, to be valid, must bear some reasonable relationship to the public safety, public health or public morals. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A. 1916F, 177; *Campbell v. McIntyre,* 165 Tenn. 47, 52 S.W.2d 162; *State v. Greeson,* 174 Tenn. 178, 124 S.W.2d 253.

It is my understanding, based upon all the authorities, that should the doctrine be extended beyond this general concept to include the supposed comfort and welfare of the public it cannot be exercised capriciously and arbitrarily to the infringement of personal and property rights. The police power, sought to be invoked in the case at bar, derives from nothing.

In a number of estates it is held that "acts innocent and innocuous in themselves may be prohibited *if nec-*

*essary* to secure an efficient enforcement of *valid* police regulations.'' (Emphasis supplied.) 16 C.J.S. Constitutional Law sec. 175, p. 904. Thus in our own case of *McCanless v. State ex rel. Hamm,* 181 Tenn. 308, 181 S.W.2d 154, 156, 153 A.L.R. 832, it is held, ''an innocent activity may be regulated or prohibited if its pursuit frequently offers opportunity for fraud or deception.'' The Court was dealing with the regulation of the liquor traffic.

There is well nigh unanimity of authority to the effect that there are limitations on the police power. It is said in many decisions that the ''state's exercise of the power is reached *when the regulation transcends public necessity.''* (Emphasis supplied.) 16 C.J.S. Constitutional Law sec. 195, p. 939, and cases cited in the footnotes.

The argument is made that any business carried on contrary to Central Standard Time is *confusing* to the general public. This to my mind is too vague and innocuous to support the validity of the Act. I construe the Act not to prohibit an individual from operating his business within certain hours of the day or night. But it is a crime to advertise the fact. The Act in question is, in my opinion, an unconstitutional infringement upon the personal rights and privileges of citizens in the control of their own affairs, such control being in no way in violation of the rights of others.

In *Campbell v. McIntyre,* 165 Tenn. 47, 51, 52 S.W.2d 162, 163, it is said:

'' 'Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under

review, cannot be upheld consistent with the 14th Amendment. Under that amendment nothing is more clearly settled than that it is beyond the power of a state, "under the guise of protecting the public, arbitrarily (to) interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them." *Jay Burns Baking Co. v. Bryan,* 264 U.S. 504, 513, 44 S.Ct. 412, 413, 68 L.Ed. 813, 826, 32 A.L.R. 661; and authorities cited; *Louis K. Liggett Co. v. Baldridge,* 278 U.S. 105, 113, 49 S.Ct. 57, 73 L.Ed. 204, 208.' "

The Act in question plainly undertakes to regulate the time of day and night in which an individual may carry on a lawful business. It is fantastic to visualize it as affecting public morals, public health and public safety, which is the foundation upon which all "police power" rests. No one can say it is a matter of public necessity.

I respectfully dissent.