**PLAYBOY CLUB, INC., et al., Appellants,**

v.

**Orson F. MYERS et al., Respondents.**

**No. 53214.**

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1968.

Morris Dubiner, Donald E. Raymond, Kansas City, for appellants.

Herbert C. Hoffman, City Counselor, Rex G. Bostwick, Asst. City Counselor,

Kansas City, for respondent, Orson F. Myers.

Manfred Maier, Kansas City, for respondent, Clarence M. Kelley.

Norman H. Anderson, Atty. Gen., Walter W. Nowotny, Jr., Gerald L. Birnbaum, Asst. Attys. Gen., Jefferson City, for respondent, John Harry Wiggins.

EAGER, Judge.

Plaintiffs, including an intervenor allied with them in interest, filed suit in two counts for a permanent injunction and for a declaratory judgment against the Director of Liquor Control of the City of Kansas City, the acting Supervisor of Liquor Control of Missouri, the Chief of Police and the Police Commissioners of Kansas City. We shall generally refer to all those seeking the relief as plaintiffs. There was an amended petition and sundry answers. We shall not consume space by reciting the allegations of the rather lengthy pleadings. The sole issue is whether plaintiffs must close their retail liquor businesses at 1:30 A.M. Central Standard Time or at 1:30 Central Daylight Time between the last Sunday in April and the last Sunday in October. They assert that defendants have declared their intention of enforcing daylight time and that they will thereby lose (and presumably have lost) one hour of their most profitable business time, it being further claimed that they do most of their business during the hours of darkness. The closing hour of 1:30 A.M. comes one hour sooner under daylight time and would thus be the equivalent of 12:30 A.M., computed on Central Standard Time; hence, plaintiffs claim the benefit of the latter, and seek to prohibit all interference with their alleged right to do so. On their contentions, they would be permitted to do business until 2:30 A.M. Daylight Time. The defendants admitted all formal allegations, but denied all those allegations which constituted the substance of plaintiffs' claims.

We note here that nowhere in the transcript are the names of the various plaintiffs shown. This is most unusual and we consider the omission improper. Counsel should see to it that the reporter lists all the parties, at least in the title of the transcript. The appellate court, as well as the trial court, is entitled to know who the parties are.

The statute over which the controversy rages is § 311.290, RSMo 1959, V.A.M.S. That was the act in force at the time the petition was filed and also at the time of the judgment. It provides, insofar as material here, as follows:

"No person having a license under this law nor any employee of such person shall sell, give away or otherwise dispose of or suffer the same to be done upon or about his premises, any intoxicating liquor in any quantity between the hours of 1:30 a. m. and 6:00 a. m. on week days and between the hours of twelve o'clock midnight Saturday and twelve o'clock midnight Sunday, * * * and if said person has a license to sell intoxicating liquor by the drink, his premises shall be and remain a closed place as defined in this section * * * between the hours of 1:30 a. m. and 6:00 a. m. on week days and twelve o'clock midnight on Saturday and twelve o'clock midnight on Sunday; * * * Any person violating any provision of this section shall be deemed guilty of a misdemeanor."

Section 311.295, RSMo 1959, V.A.M.S., which is discussed in the briefs, but is not controlling here, was as follows:

"The city council, board of aldermen or other governing body, as the case may be, of any city now or hereafter having a population of three hundred and fifty thousand or more as determined by the last United States decennial census may by ordinance provide that intoxicating liquor may be sold by licensees within the limits of such city for one and one-half hours following twelve o'clock midnight Saturday, and may prohibit the sale

thereof before one thirty o'clock a. m. Monday."

Section 311.295 was repealed in 1967, apparently for the reason that the extended hours thereby permitted, from midnight on Saturday to 1:30 A.M. on Sunday, were incorporated into the re-enacted § 311.290. No distinction is made here between the hours on Sunday and on weekdays, and that matter requires no discussion.

■ Some reference is made in the pleadings and the briefs to an ordinance of Kansas City regulating the hours of retail liquor sales and designating such hours by "Central Standard Time." No such ordinance was received in evidence or covered by stipulation, and we do not take judicial notice of city ordinances. It was stipulated that in the City of St. Louis a Daylight Saving Ordinance had been in force since 1948, but that, nevertheless, those taverns in St. Louis which desired to do so, had been "permitted" to stay open until 2:30 A.M. Daylight Saving Time. Certain exhibits supposedly concerning the St. Louis situation were offered, but they are not contained in the transcript and have not been filed here separately. However, we regard them, the St. Louis ordinance and the Kansas City ordinance, as immaterial and we shall not consider them.

The parties also stipulated: that prior to April 30, 1967 business, commerce, industry, state and local governments, and schools in Missouri (except from "time to time in the City of St. Louis and a few municipalities") had observed Central Standard Time; that since that time "most business, commercial, industrial and financial establishments, agencies of the state and local governments and schools in the State of Missouri have recognized and adopted for use advanced Central Standard Time, or Central Daylight Savings Time as provided for and defined in the Uniform Time Act of 1966"; that such advanced time postpones "the hours of darkness and daylight by one hour * * *" and that this affects plaintiffs' businesses in a substantial and harmful manner; that some other businesses, etc., had postponed by one hour their times of opening and closing in order to avoid "adverse effects"; that these included "stockbrokers, communications media, highway construction and maintenance" (the latter apparently as agencies of state or local government); that defendants had announced an intention of enforcing the closing hours according to Daylight Time.

After the entry of one judgment (which was essentially only a finding for the defendants) and the filing of motions, that judgment was set aside, various answers filed or refiled, and a new judgment entered on July 3, 1967. Therein the court found generally for the defendants on the count seeking an injunction. On the other count it entered a declaratory judgment holding: that Congress did not intend for the Uniform Time Act of 1966, 15 U.S.C.A. §§ 261–265, to apply to the plaintiffs; that in "enacting Section 311.290, the Missouri Legislature intended that time to apply then in general and customary use throughout the State of Missouri during any given period"; that the time in customary and general use in Missouri since 2:00 A.M. on the last Sunday in April, 1967, has been Advanced Central Standard Time; that the ordinance of Kansas City purporting to establish Central Standard Time as that governing the hours of retail liquor licensees is in conflict with § 311.290 and is therefore invalid. After the overruling of motions for new trial appeals were taken in due course.

The pleadings of the intervenor asserted that the federal Uniform Time Act of 1966 was unconstitutional in various respects insofar as it might be applied to it and the plaintiffs. No such question has been briefed here by any appellant and the point has thus been abandoned. Moreover, it is not claimed by defendants that the federal act was ever intended to be mandatorily applicable to any of these parties plaintiff. We consider that point no further.

The hours of liquor sales have been regulated to some extent in Missouri since 1907. See, Laws 1907, p. 253; Laws 1933–34, Ex. Sess., p. 77; Laws 1935, p. 267; Laws 1941, p. 412; Laws 1957, p. 27. These statutes, by amendment and cumulative effect, became our § 311.290, RSMo 1959. As already indicated, that section was amended further in 1967, § 311.290, Cum.Supp.1967, but in respects not material here. Our problem is simply this: When the legislature prohibited the sale of liquor between "1:30 a. m. and 6:00 a. m. on week days" and between "twelve o'clock midnight Saturday and twelve o'clock midnight Sunday" (with a subsequent extension on the latter), did it permanently fix those hours as computed according to Central Standard Time? Plaintiffs say that it did; defendants say that it did not.

The basic contention of plaintiffs is: that Central Standard Time was the method of computation in universal use when § 311.290' was enacted, that the legislature intended that a computation of time and enforcement according to that method be used, and that plaintiffs may not be deprived of that right; also, that the Uniform Time Act of 1966, 15 U.S.C.A. §§ 261–265, does not apply either to public or private business within the states; and that any interpretation of § 311.290 which permits a variance of the hours according to common usage renders it so vague and uncertain as to make its validity uncertain. We repeat here that no one in the case contends that the 1966 federal act is conclusive upon these parties; it declared a policy of promoting the "adoption and observance of uniform time," authorized the Interstate Commerce Commission to "foster and promote" such, and prescribed for each time zone a time "advanced one hour," from the last Sunday in April until the last Sunday in October. It further provided that the act should govern the movement of common carriers in interstate commerce, federal officers and departments, and all those acts governed by Federal statutes, orders, rules and regulations; it also provided that any state might,

by law covering the entire state, exempt itself from the provisions of the act, presumably to assure uniformity in local affairs.

■ Under the stipulation it appears that the City of St. Louis and various municipalities in the eastern part of Missouri had observed daylight time for a considerable period prior to April, 1966. We further know, and of that we take judicial notice, that promptly on May 1, 1967 the people, businesses and public agencies in Missouri began to observe and did observe advanced or daylight time, setting their clocks forward one hour and turning them back at or just before the last Sunday in October; and that such action was repeated immediately following the last Sunday in April, 1968. It would simply be foolish to doubt that the people of Missouri have thus adopted and followed the advanced time since the end of April, 1967.

The matter of "custom and usage" has been discussed by plaintiffs here, and they insist that a "custom" must be something of long duration or antiquity, citing 25 C.J.S. Customs and Usages § 3, p. 100, and Baker v. J. W. McMurry Contracting Co., 282 Mo. 685, 223 S.W. 45. We are not dealing with a custom in the technical sense, and such authorities are not at all persuasive. What we deem material here is the complete, immediate and voluntary *acceptance* by the people of Missouri of daylight time, following the enactment of the federal act. That action was wholly independent of any custom considered in a technical sense.

■ In this background we construe § 311.290, which fixes the closing hours with no specific designation of a method for computing time. There are no cases directly in point, and few that are even helpful. The cardinal rule of statutory construction is to ascertain the intent of the legislature from the language used, and therein to consider all words in their ordinary and plain meaning. Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122; St. Louis Southwestern Railway Co. v. Loeb,

Mo.Banc, 318 S.W.2d 246, 252. But, if necessary, we should also consider the "circumstances and the usages of the time." Loeb, supra. Plaintiffs say also that such an act should be construed in accordance with its meaning at the time of enactment, citing 82 C.J.S. Statutes § 329, p. 638.

We have concluded that the Missouri legislature, in failing to specify any particular method of fixing or computing time, intended that the opening and closing hours be fixed according to the system or method generally used by the people of Missouri, its business and commerce, its public agencies, and its political subdivisions, *at the time* when the method of computation or the meaning of the statute is brought into question. We further hold that such method now is advanced time (or daylight time) between the last Sunday in April and the last Sunday in October of each year, and that it has been such since April 30, 1967. To be more specific, the legislature intended that if there should be a general acceptance in Missouri of a time other than Central Standard Time, the time so accepted and used should be the guide for enforcement. Such a construction does not render the section unreasonably vague or uncertain; and in our circumstances there can be no question whatever as to the method now in use. Section 311.290 was re-enacted in 1967. The legislature was in session when the people of Missouri as a whole adopted and began the universal use of daylight savings time; in fact it remained in session for at least two months thereafter. If it then had any intention of prohibiting the use of that method of computation in any legislative calculation it could have acted, either by means of a general exemption or by amendment of specific acts, including § 311.290. It did not do so; in fact the state, publicly and privately, seems to have fully and completely endorsed the method.

Plaintiffs have cited no authorities which actually require individual discussion. We do note, however, the case of Massachu-

setts State Grange v. Benton, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387, in which it was held that a state daylight savings law was not rendered invalid by the federal act of 1918 establishing time zones, because the latter did not attempt to regulate state affairs. That is also true of the 1966 act, and we agree with plaintiffs that it does not lay any mandate upon the states. In Jones v. German Ins. Co., 110 Iowa 75, 81 N.W. 188, 46 L.R.A. 860 (1899), the issue was whether "noon" as used in a contract of insurance was to be computed by "sun time" or Central Standard Time. Both methods were in use in Iowa, and the court permitted the jury to determine whether there was a known and established custom sufficient to show that standard time was intended. The jury, as expected, found in favor of that custom which made the insurance company liable. The case is of no materiality here.

Defendants cite certain cases which, although not specifically in point, do enunciate principles which we consider by way of analogy. In State Election Board v. McClure et al., 243 Ind. 658, 189 N.E.2d 711 (1963), the court held that the time as fixed by the federally established time zones should govern the hours of holding elections; the Indiana election statutes prescribed no method. Thus, although the Interstate Commerce Commission had zoned 43 eastern counties in one time zone and the rest of the state in another, that system was approved and followed. It seems, however, that the opinion was based primarily upon the fact that the *people* had accepted the times as thus fixed, and not upon any binding effect of the federal law. In Whitmer v. House, 198 Kan. 629, 426 P.2d 100, it was held that the United States Time Act of 1918 was not binding on subdivisions of the state, and that it did not preclude independent action by such subdivisions. Essentially the same holding appears in City of Louisville v. Louisville Livestock Exchange, 302 Ky. 536, 195 S.W.2d 76. In Salt Lake City v. Robinson, 39 Utah 260, 116 P. 442, 35 L.R.A.,N.S.,

610 (1911), the court took judicial notice of the fact that all railroads, streetcars, banks, schools, courts and businesses in Salt Lake City (it being a city prosecution) operated on Mountain Standard Time, as prescribed by the federal time zones, and it was there said that the courts "should apply the time in general use." The same principle was applied in Anderson v. Cook, 102 Utah 265, 130 P.2d 278, 143 A.L. R. 987 (1942), where the court found and held (by way of judicial notice) that the people of Utah had recognized and adopted the United States War Time Act of January 20, 1942, that such method of computation had become the time in general use, and that such method would be required in applying the hours fixed in the 1939 Utah election laws. There, as here, the hours stated in the election laws were fixed *before* the state adopted (in fact) the use of advanced time. The court said, however, in view of its previous holding in Robinson, supra, that if the legislature had intended any other basis of computation than the method in general use, it "would have so specified." See also State v. Badolati, 241 Wis. 496, 6 N.W.2d 220, 143 A.L.R. 1234.

We conclude that the hours referred to in § 311.290 are those hours fixed according to the method in general use in the state of Missouri at the time the issue is submitted; that the legislature did not intend to *freeze* those hours to Central Standard Time if some other method was subsequently adopted generally by the people of Missouri; that daylight savings time *has* been so adopted and that all plaintiffs (including the intervenor) must comply with it. The arguments concerning city ordinances and any practices thereunder are wholly immaterial, for no ordinance or interpretation can be valid if contrary to our construction of the statute.

We affirm the judgment of the trial court, but we remand the cause with the direction that it add to its declaratory judgment a provision declaring specifically that the plaintiffs (and intervenor) shall not be permitted to operate their respective businesses or sell any liquor between the hours of 1:30 o'clock A.M. and 6:00 o'clock A.M. as calculated by Daylight Savings Time or Advanced Central Standard Time.

All of the Judges concur.