# Otto Milk Company v. City of Washington et al.

*McCloskey, Best & Leslie, McAlister & Sweet* and *William C. Porter*, for plaintiff.

*Meyer Goldfarb* and *Ralph W. Peacock*, for defendants.

CUMMINS, J., September 17, 1951.—This is a suit in equity wherein plaintiff seeks an injunction restraining defendants from unlawfully interfering with its business.

Plaintiff, Otto Milk Company, is a Pennsylvania corporation having its domicile in the City of Pittsburgh, Pa. Plaintiff is engaged in the business of receiving, processing and distributing, at wholesale, milk and the derivatives thereof. Plaintiff sells and distributes milk in Pittsburgh and the surrounding area, including defendant City of Washington. Distribution plants are also operated by plaintiff at Smithton, Rochester, and Blairsville, Pa.

Plaintiff has duly qualified and holds a permit issued by the Secretary of Health of the Commonwealth of Pennsylvania, authorizing plaintiff to sell pasteurized milk in this Commonwealth. Plaintiff is also duly licensed by the Milk Control Commission of the Commonwealth of Pennsylvania to transact business as a milk dealer in this Commonwealth.

Plaintiff also holds a permit from the Board of Health of the City of Washington to sell certified, raw and pasteurized milk in defendant city. Prior to this suit plaintiff has sold milk in defendant city for more than 17 years. Since November 1949 plaintiff has been selling milk in Washington in "Pure-Pak" containers.

In the distribution of its milk and milk products plaintiff uses the "Pure-Pak" fibre-board or paper container exclusively, which container has been approved by the Secretary of Health of the Commonwealth of Pennsylvania for distribution of milk in Pennsylvania.

This suit is a sequel to a prior action in equity between the same parties filed in this court at no. 4629 in equity. Both suits were precipitated by defendants' attempts to prohibit plaintiff from using "Pure-Pak" containers for delivery of milk in defendant city.

In the first suit this court enjoined these defendants from enforcing certain resolutions of defendant board of health requiring that milk be bottled and delivered in transparent containers; and further, on appeal, the Supreme Court also enjoined these defendants from enforcing the then existing ordinance in such manner as to prohibit or interfere with the use by plaintiff of "Pure-Pak" containers in the sale and delivery of milk and from revoking plaintiff's health permit because plaintiff sells or delivers milk in paper milk bottles: Otto Milk Company v. Washington City et al., 363 Pa. 243.

This Supreme Court opinion was handed down on November 21, 1949. On April 5, 1950, a new ordinance regulating the sale of milk was enacted by the City of Washington. Section 6 of this ordinance provides that:

"No person shall sell: . . .

"(f) Milk in quantities of less than one (1) gallon in any containers other than a transparent standard glass milk bottle."

Section 2 of the ordinance is of similar import and provides:

"Section 2 (d) 'Pasteurized Milk' shall be sold in quantities of less than one (1) gallon in transparent standard glass milk bottles only."

Prior to the effective date of the new ordinance, which was May 15, 1950, plaintiff filed its bill in this suit seeking to restrain defendants from interfering with plaintiff's lawful business of selling and distributing milk and the fluid derivatives thereof in "Pure-Pak" paper bottles or containers; and further to restrain defendants from enforcing the new ordinance in such manner as to prohibit or interfere with the use by plaintiff of paper milk bottles or containers in the sale and delivery of milk and the fluid derivatives of milk in said city; and further to restrain defendants from revoking the health permit of plaintiff because plaintiff sells or delivers milk or milk products in paper milk bottles or containers.

In substance the bill alleged that the new ordinance is invalid, unconstitutional and void insofar as the ordinance limits the bottles or containers to be used in the sale and delivery of milk to transparent standard glass milk bottles and prohibits the use of "Pure-Pak" paper bottles or containers.

An answer was filed by defendants which in substance avers that the ordinance prohibiting the sale of milk in any containers other than transparent standard glass milk bottles is valid.

A preliminary injunction was granted to plaintiff, which was continued until final hearing.

The principal issue raised by the pleadings is the validity of the ordinance insofar as it prohibits sale of milk in any container other than a transparent standard glass bottle and particularly, insofar as it prohibits use by plaintiff of the "Pure-Pak" container in the sale of milk in said city.

## Findings of Fact

1. Plaintiff, Otto Milk Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its domicile in the City of Pittsburgh, Allegheny County, Pa.

2. Defendant, City of Washington, is a municipal corporation in the County of Washington, Commonwealth of Pennsylvania. Dr. J. R. Maxwell, Dr. G. W. Ramsey, W. D. Hancher, John T. Toben and J. Frank Rutan are members of the Board of Health of the City of Washington. Defendant C. E. Houston is Health Officer of the City of Washington, and defendant Thomas W. Henderson is Secretary of the Board of Health and also food and milk.

3. Plaintiff has duly qualified for the sale of milk and kindred products under the laws of the Commonwealth of Pennsylvania and a permit has been duly issued by the Secretary of Health of the Commonwealth authorizing plaintiff to sell and deal in milk and kindred products in the Commonwealth.

4. At the time the bill was filed, on May 8, 1950, plaintiff, Otto Milk Company, had duly qualified for the sale of milk and kindred products in the City of Washington and had done so for a period of 17 years and upward and a permit had been duly issued by the Board of Health of the City of Washington authorizing plaintiff to sell, distribute and deal in milk and kindred products in the city. The permit expired on the day prior to the effective date of an ordinance of the City of Washington, or on May 14, 1950.

5. On the date the bill in equity was filed, May 8, 1950, the sale of milk in the City of Washington was regulated by ordinance adopted by council on July 22, 1925, known as the "Milk Ordinance".

6. On the date the bill in equity was filed, May 8, 1950, under the terms and provisions of the Milk Ordi-

nance, adopted by the Council of the City of Washington on July 22, 1925, plaintiff is permitted to sell and distribute milk and milk products in the City of Washington in paper milk bottles or containers, and particularly in the paper milk bottle or container known as "Pure-Pak" container or bottle.

7. The city adopted an ordinance, no. 577, regulating the sale and distribution of milk in the City of Washington on April 5, 1950, which became effective on May 15, 1950.

8. In a prior suit between these parties, defendants were enjoined from enforcing the then existing ordinance in such manner as to prohibit or interfere with the use by plaintiff in the sale and delivery of milk and the fluid derivatives thereof in the City of Washington of the "Pure-Pak" containers and defendants were further enjoined from revoking the health permit of plaintiff because plaintiff sells or delivers milk or milk products in paper milk bottles.

9. After the filing of the final decision in the prior suit, that is, since about November 1949, plaintiff has sold milk in Washington in "Pure-Pak" containers.

10. Plaintiff uses the "Pure-Pak" container, exclusively, in the bottling of its milk and milk products.

11. The "Pure-Pak" container is made of fiber board, also commonly called paper.

12. The "Pure-Pak" machine which processes the packaging of milk is entirely enclosed.

13. In the "Pure-Pak" process blanks are automatically fed into the machine. These blanks are flat and consist of two plies of fiber board pre-cut to a certain pattern to make a container.

14. Immediately before filling with milk, the container in the "Pure-Pak" machine is wholly immersed in paraffin which is automatically kept at a temperature between 170 and 180 degrees, and which is essentially sterile.

15. The Secretary of Health of the Commonwealth of Pennsylvania has approved the use of "Pure-Pak" containers for distribution of milk in Pennsylvania.

16. The use of the paper container, which is also called the single service container, is approved for the packaging and distributing of milk by the United States Department of Public Health Service.

17. About 350 million "Pure-Pak" containers per month are used for distribution of milk in 47 of the 48 States of the United States.

18. In packaging milk in glass, foreign substances are found in the bottles of milk delivered to the consumer.

19. Substances found in milk bottled in glass include particles of glass, wire, soot and dust.

20. Some of the foreign substances found in milk bottled in glass are harmful to human beings if ingested.

21. No evidence was introduced to show a single instance in which any substance other than milk and paraffin was found in a paper container used for delivery of milk.

22. Glass milk bottles sometimes are retrieved from refuse dumps and returned to dairies through bottle exchanges and used again for delivery of milk to the consuming public.

23. Milk is delivered to houses where cases of communicable diseases exist in the City of Washington in glass bottles which are returned to the dairies and re-used.

24. In the glass milk bottle process, the glass bottles at times are broken in the washing operation and in the capping operation.

25. In the glass milk bottle process the glass bottles are exposed to open air after washing and before capping and the glass bottles may be touched by the machine operators.

26. In the glass milk bottle process visual inspection of bottles is necessary after the bottles are washed.

27. Milk bottled in flint glass bottles when exposed to sunlight suffers a greater loss of vitamin B2 (riboflavin), and vitamin C (ascorbic acid), than milk bottled in "Pure-Pak" paper containers.

28. Milk bottled in flint glass bottles when exposed to direct or indirect sunlight more frequently develops a distasteful flavor, sometimes called "sunlight flavor", than milk bottled in "Pure-Pak" paper containers.

29. Plaintiff obtains some of its "Pure-Pak" blanks from the International Paper Company at Bastrop, La.

30. Plaintiff operates a receiving station at Andover, Ohio, where milk is collected from farms in the vicinity, brought to Pittsburgh and distributed in the Pittsburgh area including the City of Washington.

31. By ordinance (ordinance no. 577, effective May 15, 1950), the City of Washington has prohibited the sale of milk in quantities of less than one gallon in any containers other than a transparent standard glass milk bottle.

32. Ordinance no. 577 prescribes procedures of moist heat treatment, bottle washing and sterilization which can be used only with glass milk bottles and cannot be used with "Pure-Pak" paper bottles.

33. The process which plaintiff uses in handling, filling and packaging its "Pure-Pak" paper containers insures a degree of sterility, cleanliness, and sanitation equal to that obtained with glass bottles treated and used as prescribed by the ordinance.

34. The ordinance adopted April 5, 1950, provides in part as follows:

"Section 2. Pasteurized milk shall be handled in accordance with the following special regulations: . . .

"(d) 'Pasteurized Milk' shall be sold in quantities of less than one (1) gallon in transparent standard glass milk bottles only.

"(e) The caps of all bottles containing 'Pasteurized Milk' and all other liquid milk or milk products shall be uncolored on the portion thereof, coming in contact with milk, and shall have the name and address of the processor or manufacturer and the kind of milk offered for sale (Pasteurized or other liquid milk and such further designation as shall be applicable under the terms of this Ordinance) such information to be clearly and legibly printed on the outer side of the cap. All caps and including those not provided for by this Ordinance, must be submitted to and approved by the Board of Health of the City of Washington, before using. . . .

"Section 5. All transparent standard glass milk bottles and all larger containers in which milk is sold shall bear a clear and legible label or marking which shall contain the following: (a) The name of the dealer; (b) The contents of the container in accordance with the definition of Section 1 hereof, to which may be added any classification approved by the laws of the Commonwealth of Pennsylvania or regulations adopted thereunder; (c) Richness may be indicated by stating the milk fat or butter fat content and the tolerance of one-tenth of one percent shall be permitted; (d) Breed type of milk may be stated if the contents are from accredited herds of the breed indicated.

"Section 6. No person shall sell: . . .

"(b) Milk labeled in any manner other than in accordance with Section 5 hereof, or with any additional matters not included within Section 5 hereof, or so as to mislead or deceive the purchaser in any way. . . .

"(d) Milk in containers which have not been first subjected to moist heat of at least 180 degrees or 3 minutes of a caustic soda bath of not less than two and (2½%) one half percentum in a 'soaker' type washer at not less than 165 degrees for five (5) minutes or been subjected to moist heat and washed with a wash-

ing compound rinsed in clean water and thereafter sterilized with live steam. . . .

"(f) Milk in quantities of less than one (1) gallon in any containers other than a transparent standard glass milk bottle.

"(g) Milk in transparent standard glass milk bottles capped in any way other than in a sanitary manner by an approved mechanical capper and the cap of which shall cover and protect the pouring lip of said bottles to at least its largest diameter."

35. Defendant Board of Health of the said city has issued to plaintiff a permit covering the period from April 1, 1950, to May 15, 1950, which permit expires on May 15, 1950.

36. Only two men are required in the process of filling glass milk bottles, one to supply the machine and the other to lift the finished product in the cases. The whole operation is automatic and no human hands touch the container from the time it is supplied to the solution for sterilizing until it is placed in the case.

37. "Pure-Pak" containers as used by the Otto Milk Company were not subjected to moist heat or to moist heat and chemical treatment as referred to in the Milk Ordinance.

38. There is no evidence that a capper of any sort is used in enclosing the "Pure-Pak" containers.

39. The "Pure-Pak" containers as used by the plaintiff are opaque which prevents the purchaser thereof from discovering whether the same contains visible dirt or other deleterious substances.

40. The sterilization of transparent standard glass milk bottles is in accordance with the requirements of the ordinance of the City of Washington a satisfactory sterilization.

41. In a transparent glass milk bottle when the milk reaches a certain stage of sourness, the curds are visible on examination.

42. Under circumstances set forth in the finding immediately above curds will not be visible in the "Pure-Pak" container.

43. The writing or printing contained upon the "Pure-Pak" paper container is as follows:

"OTTO Cream Thru
PASTEURIZED
HOMOGENIZED
MILK
ONE QUART
Lift to Open
OTTO
CREAM THRU
HOMOGENIZED MILK
FRESH
EVERY DAY
AT YOUR
NEIGHBORHOOD
STORE
OTTO MILK COMPANY, PGH., PA.
PHONE ATLANTIC 1-5900

2-381-17
2-381-17
PURE-PAK
Reg. U. S. Pat. Off.
SINGLE SERVICE CONTAINER
A Product of
EX-CELL-O CORPORATION
DETROIT, MICH.
OTTO
CREAM THRU
HOMOGENIZED MILK
FOR UTMOST
ECONOMY . . .
BUY MILK
AT YOUR STORE
AS YOU NEED IT
OTTO MILK COMPANY, PGH., PA.
PHONE ATLANTIC 1-5900
OTTO Cream Thru
PASTEURIZED
HOMOGENIZED
MILK
ONE QUART
OTTO

CREAM THRU
HOMOGENIZED
PREMIUM
MILK
AT THE PRICE
OF ORDINARY
MILK
OTTO MILK COMPANY, PGH., PA.
PHONE ATLANTIC 1-5900
Covered
by one or more
U. A. Patents Nos.

| 2,025,477 | 2,047,891 | |
| 2,079,875 | 2,079,876 | 1 2 |
| 2,087,940 | 2,218,670 | |
| 2,263,957 | 2,270,617 | |
| 2,288,914 | 2,329,797 | |

Manufactured for Ex-Cell-O Corporation by
INTERNATIONAL PAPER COMPANY
SINGLE SERVICE DIVISION
NEW YORK 17, N. Y.
Approved Pa. Serial P 1

OTTO
CREAM THRU
HOMOGENIZED MILK

THIS TAMPERPROOF
CONTAINER IS MORE
SANITARY . . . . . MORE
CONVENIENT . . . . NO
BOTTLES TO WASH . . . .
NO GLASS TO BREAK . . . .
NO BOTTLES TO RETURN
OTTO MILK COMPANY, PGH., PA.
PHONE ATLANTIC 1-5900"

44. The "Pure-Pak" container has at times failed to have the bottom of its container closed when it got an insufficient amount of glue.

45. Glue to fasten the "Pure-Pak" container together is placed on the rolls by hand.

46. At the time the bill in equity was filed paraffin in which the "Pure-Pak" containers were immersed was received by plaintiff in slabs that weighed 11 pounds each and the slabs were lifted by hand into the

machine and there melted. At the time of the hearing it is in tanks and it was not shown as to how often the tanks were cleaned or any sterilization tests made thereon.

47. In packaging milk in glass bottles, the caustic solution is never permitted to be reduced below three percent.

48. Bottles are destroyed which are returned containing kerosene or lubricating oil.

49. All tests made on "Pure-Pak" containers were made on selective items and not on items taken at random from a regular run.

50. Glass bottles are inspected both before the bottles go to be filled and after they are filled.

51. In a glass bottle operation certain foreign substances have been discovered by the inspector when they are removed from the end of the line.

52. "Pure-Pak" containers on occasions become soggy and misshapen.

53. The City of Washington does not maintain a laboratory of its own for the purpose of making tests. Tests are made at the laboratory at the Washington Hospital.

54. Premium is defined as being: "A reward or recompense; a prize to be won by being before another or others in competition; reward or prize to be adjudged; bounty, as a premium for good behavior or scholarship, for discoveries, etc."

55. The label on the "Pure-Pak" container as used by plaintiff violates section 6, par. B, of Bill No. 577, as written by the City of Washington enacted April 5, 1950, in the following particulars:

(a) By stating "Premium milk at the price of ordinary milk", which is in excess of wording allowed in section 5.

(b) "Cream-Thru" in that it is wording in excess of that allowed by section 5 of the ordinance.

(c) "Fresh Every Day in your Neighborhood Store" is wording on the container in excess of that allowed in section 5 of the ordinance.

(d) "For utmost economy buy milk at your store as you need it" which is wording on the container in excess of wording allowed in section 5 of the ordinance.

(e) "This tamper-proof container is more sanitary . . . more convenient . . . no bottles to wash . . . no glass to break . . . no bottles to return" which is wording on the container in excess of the wording allowed in section 5 of the ordinance.

56. From the public health standpoint, the "Pure-Pak" container is a safe and sanitary container for packaging milk and the fluid derivatives of milk.

57. From the public health standpoint, the glass milk bottle is a safe and sanitary container for packaging milk and the fluid derivatives of milk.

### Discussion

The "Pure-Pak" paper container used by plaintiff has been approved for use in Pennsylvania by the Secretary of Health of the Commonwealth. It is also approved for use by the United States Public Health Service. The testimony showed that about 350,000,000 "Pure-Pak" containers per month were used in the distribution of milk in the United States.

Plaintiff produced as witnesses several bacteriologists who testified as to the results obtained by them in bacteriological tests run on "Pure-Pak" containers. These bacteriologists expressed opinions that the "Pure-Pak" container is a safe, sanitary and health protecting container for packaging milk. Defendants did not in any manner refute this testimony.

Testimony of the witnesses, including the witnesses called by defendants, showed that foreign substances, including glass, are found by consumers in milk bottled in glass bottles. No evidence was produced to show

that foreign substances are found in milk bottled in paper containers. Evidence was produced by plaintiff which showed that exposure of milk bottled in flint glass bottles to sunlight for as long as one-half hour resulted in the destruction of substantial amounts of its vitamin content and frequently resulted in development of an off-flavor called sunlight flavor; whereas, the paper container gave protection against such loss of vitamins and development of sunlight flavor.

The single service feature of the paper bottle also is a safeguard to public health, particularly in cases where deliveries of milk are made to houses where communicable diseases exist. This fact is alluded to· by Chief Justice Maxey in a footnote to his opinion in the prior suit: Otto Milk Company v. Washington City et al., 363 Pa. 243 at 254. The new ordinance no longer requires use of paper containers in deliveries to houses where communicable diseases exist. However, section 11 of the new ordinance requires special treatment of bottles used in deliveries to houses where communicable disease exists and contains within itself an admission that danger exists in reuse of glass bottles.

Having found that the "Pure-Pak" container is a safe and sanitary container from the public health standpoint, the question arises as to whether or not the city, by ordinance, can prohibit its use. Construction of the ordinance involves basic questions concerning the exercise of the police power and the limitations thereon. The Supreme Court decided the prior suit between these parties in such a way that it was not necessary for the court to then decide whether or not an ordinance requiring milk to be delivered in transparent containers would be a valid exercise of the police power. In his opinion, Chief Justice Maxey, however, went on and recited the principles of law applicable to such a situation, as follows: Otto Milk Company v. Washington City et al., 363 Pa. 243, 251, et seq.:

"Whether an ordinance requiring milk to be delivered in transparent containers would be a valid exercise of the police power, need not now be decided. This Court in Flynn et al. v. Horst, 356 Pa. 20, 25, 51 A. 2d 54, quoting from an earlier opinion stated: ' ". . . while it is for the legislature to determine in the first instance what laws and regulations are needed to carry out these ends, the courts may determine whether the regulations have some reasonable relation to those ends" '. We also there stated that: 'The reasonableness of a "police regulation" of any business depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to "interfere with the enjoyment of individual rights beyond the necessities of the case": Reduction Company v. Sanitary Works, 199 U. S. 306, 318.' We quoted from the case of Leonard v. State, 100 Ohio St. 456, 157 N. E. 404, where Justice Wanamaker, speaking for the Supreme Court of Ohio, said: 'The measure of police power must square with the measure of public necessity. The public need is the polestar of the enactment, interpretation and application of the law . . .' We also quoted the following from White's Appeal, 287 Pa. 259, 134 A. 409: 'While the tribunal to determine the proper exercise is in the first instance the legislature, the ultimate decision rests with the courts. If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the judicial duty to declare the given exercise of the police power invalid (citing cases). "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive,

but is subject to the supervision of the courts" ' (citing cases).

"Cooley in Vol. 2 of Constitutional Limitations (8th ed.) p. 1228-9 says: 'The exercise of the (police) power for the public welfare may inconvenience individuals, increase their labor, and decrease the value of their property. It is a matter resting in the discretion of the legislature, and the courts will not interfere therewith except where the regulations adopted are arbitrary, oppressive, or unreasonable. Their wisdom or expediency cannot be subjected to judicial review. (citing cases). But the power is subject to the limitations imposed by the Federal and State Constitutions upon every power of government, and it will not be suffered to invade or impair the fundamental liberties of the citizen.' "

Further pointing out the burden confronting the city if it attempted to restrict milk deliveries to transparent containers Chief Justice Maxey in a footnote at page 251 stated:

"If the city attempts by ordinance to prohibit the delivery of milk in 'Pur-Pak' fibre board or paper containers, it will have to justify such a restriction on plaintiff's use of its own property by showing that the restriction it imposes is reasonable and essential to the public welfare. In attempting to justify such a restriction it will be confronted with the facts (quoting from the lower court's findings in the instant case) that the Secretary of Health of the Commonwealth of Pennsylvania has approved the use of 'Pure-Pak' containers for distribution of milk in Pennsylvania; and that the use of the paper container, which is also called the 'single service container', is approved for the packaging and distributing of milk by the United States Department of Public Health Service."

Plaintiff has sold milk in the City of Washington for upward of 17 years. Since November 1949 plaintiff

has been selling milk in defendant city in "Pure-Pak" containers. Defendant city has undertaken to interfere with plaintiff's lawful business and to restrict the use and enjoyment of plaintiff's property and to deprive plaintiff of the fruits of its contracts by an ordinance which purports to promote the public health. Defendants have utterly failed to show that the restriction which the city imposes on plaintiff's business is reasonable and essential to the public welfare.

In Louis K. Liggett Company v. Baldridge et al. (Pa., 1928) 278 U. S. 105, 113; 73 L. Ed. 204, 209, the court said:

"A state cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them."

The police power may be exerted in the form of State legislation where otherwise the effect would be to invade rights guaranteed by the Federal Constitution only where the legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare: Idem.

The ordinance requires the use of transparent standard glass milk bottles in the sale of milk, thereby prohibiting the use of "Pure-Pak" containers theretofore approved and used in defendant city. In effect, the ordinance draws a distinction or classification between glass and paper containers, approving the glass and prohibiting use of paper, although the evidence shows that the paper container undoubtedly is a safe, sanitary and health protecting container for packaging milk. This the city may not do, because the distinction made in the ordinance does not bear any reasonable relation to the purported object of the ordinance which is to protect public health.

Insofar as the ordinance attempts to prohibit the continued use by plaintiff in its business of an ap-

proved, safe and sanitary article of commerce, which is used daily by the millions, it is in reality a discriminatory trade regulation and not a police regulaton and, although veiled in the guise of the exercise of the police power, it cannot stand: Sayre Borough v. Phillips 148 Pa. 482.

"The stifling of competition through an exercise of the state's police power is never justifiable except that it be done, and actually be, in the public interest": Hertz Driveurself Stations Inc., v. Siggins et al., 359 Pa. 25, 50.

In Dean Milk Company v. City of Madison et al., 340 U. S. 349, 95 L. Ed. 329 a city ordinance which makes it unlawful to sell milk as pasteurized, unless it has been processed and bottled at an approved pasteurization plant within a radius of five miles from the city, as applied to deny a license to sell within the city milk gathered in part from farms in another State because the seller's pasteurization plants are more than five miles away, was held invalid as imposing an undue burden on interstate commerce. This case further holds that even in the exercise of its unquestioned power to protect the health and safety of its people, a State or municipality cannot discriminate against interstate commerce if reasonably nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available.

In the instant case as in the Dean Milk Company v. Madison case, above, plaintiff also gathers part of its milk from farms in another State, to wit, Ohio, and part of the "Pure-Pak" containers which are discriminated against are obtained by plaintiff from Louisiana. Since the ordinance arbitrarily prohibits plaintiff from continuing to sell its milk in "Pure-Pak" containers, it places an undue burden on interstate commerce and is invalid for this reason also.

The ordinance as written permits the use of glass milk bottles only. As a result of this certain sections of the ordinance dealing with washing and sanitization of bottles, capping and labeling are so written as to apply to glass bottles only. Since the ordinance is invalid, insofar as it prohibits the use of "Pure-Pak" containers in the sale of milk, failure to comply with these sections, which can apply only to glass bottles, cannot be used as the basis for prohibiting use of the "Pure-Pak" containers for the reason already stated.

It, therefore, is concluded that insofar as the ordinance attempts to prohibit the use of "Pure-Pak" containers in the sale and delivery of milk it is invalid and void, and plaintiff is entitled to relief in the form of an injunction permanently restraining defendants from enforcing the ordinance in such manner as to prohibit or interfere with the use by plaintiff of "Pure-Pak" containers in the sale and delivery of milk in the City of Washington.

## Conclusions of Law

1. Equity has jurisdiction.

2. The ordinance sets up a distinction between two types of proper, safe and sanitary containers, approving use of one and prohibiting use of the other, which distinction has no real or substantial basis in considerations of health, sanitation, or safety, and does not bear a reasonable relation to the preservation of public health.

3. The distinction set up by the ordinance is an unreasonable, arbitrary and discriminatory classification.

4. Such classification or distinction is forbidden by the fourteenth article of amendment to the Constitution of the United States because it deprives plaintiff of the equal protection of the law.

5. The ordinance prohibits plaintiff from carrying on its lawful business of selling milk in approved safe and sanitary containers and thereby deprives plaintiff of his property without due process of law in violation of the fourteenth article of amendment to the Constitution of the United States.

6. The City of Washington lacks the legal power to enforce an ordinance which provides for such a classification.

7. The ordinance prohibiting plaintiff from selling its milk which is gathered in part in Ohio, in containers which are in part obtained from Louisiana, imposes an undue burden on interstate commerce when reasonably nondiscriminatory alternatives, adequate to conserve legitimate local interests are available.

8. Insofar as it forbids plaintiff to continue to market milk in the City of Washington, under its present processes, in "Pure-Pak" paper containers, the ordinance is void.

9. Plaintiff is entitled to a permanent injunction whereby defendant city, its officers, agents and employes shall be restrained from interfering with plaintiff's lawful business of selling and distributing milk and the fluid derivatives thereof in "Pure-Pak" paper bottles or containers, and further restraining defendant from enforcing Ordinance No. 577 of the City of Washington in such manner as to prohibit or interfere with the use by plaintiff of paper milk bottles in the sale and delivery of milk and the fluid derivatives thereof in the City of Washington, and further restraining defendant from refusing plaintiff a health permit because plaintiff sells or delivers milk or milk products in paper bottles or containers.

10. A final decree should be entered in the following manner:

And now, September 17, 1951, upon consideration of the foregoing case it is ordered, adjudged and de-

creed that a permanent injunction issue, enjoining and restraining the City of Washington, its officers, agents and employes from interfering with plaintiff's lawful business of selling and distributing milk and the fluid derivatives thereof in "Pure-Pak" paper bottles or containers, and further restraining defendant from enforcing Ordinance No. 577 of the City of Washington in such manner as to prohibit or interfere with the use by plaintiff of paper milk bottles in the sale and delivery of milk and the fluid derivatives thereof in the City of Washington, and further restraining defendant from refusing plaintiff a health permit because plaintiff sells or delivers milk or milk products in paper bottles or containers.

*Order*

And now, September 17, 1951, it is ordered that the foregoing adjudication be filed and that notice of its filing be given by the prothonotary to counsel appearing of record for the respective parties, and if no exceptions be filed thereto within 10 days after such notice, the prothonotary shall enter the decree set forth in conclusions of law no. 10.