## SNYDER'S DRUG STORES, INC. v. STATE BOARD OF PHARMACY AND OTHERS.

127 N. W. (2d) 682.

April 10, 1964—No. 39,005.

*Walter F. Mondale,* Attorney General, and *Robert W. Mattson,* Special Assistant Attorney General, for appellants.

*Best, Flanagan, Lewis, Simonet & Bellows,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal by the Minnesota State Board of Pharmacy from an order of the District Court of Ramsey County which reversed an order of the board denying applications of Snyder's Drug Stores, Inc., (hereafter referred to as Snyder's) for renewal licenses or pharmacy registrations for its 21 drug stores for the year commencing July 1, 1962.[1]

---

[1]The renewal pharmacy registrations sought herein, if issued, would have expired as of June 30, 1963. Accordingly, the issues involved would be

Snyder's was first organized in 1931 under a partnership agreement. In 1939 the partnership was reorganized as a Minnesota corporation. At all times since its foundation all drug stores owned by it have operated under licenses or pharmacy registrations issued by the board. As of April 1962 it owned and also operated 21 drug stores in the Minneapolis-St. Paul area.

. On April 3, 1962, the controlling stock of Snyder's was acquired by Red Owl Stores, Inc., a Delaware corporation, under a stock exchange agreement. During negotiations for this agreement, both corporations were notified by the pharmacy board that such an agreement as was contemplated would constitute a violation of Regulation 14 of the board, which provides:

"The Board of Pharmacy of the State of Minnesota shall hereafter refuse to grant licenses for the operation of pharmacies or drug stores in the State of Minnesota to individuals who are not registered pharmacists in the State of Minnesota and to corporations which are not owned and controlled by pharmacists registered in the State of Minnesota, unless the issuance of licenses to other individuals or corporations is a necessity from the standpoint of public health and welfare. All sales of the corporate stock of a corporation to which a license to conduct a pharmacy has been issued, shall be reported to the Board of Pharmacy forthwith upon forms furnished by the Secretary thereof. A sale of such stock resulting in a change in the control of such corporation constitutes a change of ownership within the meaning of this regulation.

"Provided, however, that this regulation shall not affect pharmacies or drug stores for which licenses have already been issued and which are in actual operation at the time of adoption of this regulation."

moot except that on May 8, 1963, the legislature enacted L. 1963, c. 565, § 1, which provides as follows: "Where an appeal is taken or certiorari proceeding is instituted to determine the right of a board or other administrative agency to revoke or refuse to issue or reissue a license or registration which expires upon a specified date, the term of such license or registration shall not expire until 30 days after final determination of such appeal or certiorari proceeding."

10

On June 12, 1962, after the agreement had been executed by the parties, Snyder's filed applications with the board for renewal of the annual pharmacy registrations or licenses for its 21 drug stores. Each application was accompanied by the necessary fees and the affidavit of a registered pharmacist in the employ of Snyder's averring that affiant was employed at the drug store for which the application was filed and that he was not engaged in any other business requiring his personal attention. On July 20, 1962, the board conducted a hearing on these applications and thereafter made its order denying each of them on findings as follows:

"All of the outstanding capital stock of Snyder's Drug Stores, Inc., consists of 5,000 shares of common stock * * *.

"Snyder's Drug Stores, Inc., is a wholly owned and controlled subsidiary of Red Owl Stores, Inc.

"The applications for pharmacy licenses are in fact those of Red Owl Stores, Inc., acting by and through its wholly owned subsidiary, Snyder's Drug Stores, Inc.

"The Red Owl Stores, Inc., through their retail grocery outlets have been for some time, and were as of the date of this hearing, selling drug items in violation of the state law.

"No evidence or testimony was presented at such hearing to indicate that Red Owl Stores, Inc., intended to discontinue such illegal drug sales.

"Red Owl Stores, Inc., has, within recent months, been charged with and convicted of violations of the Federal Food and Drug Act."

Based on these findings, the board's order included the following:

"Snyder's Drug Stores, Inc., is a wholly owned and controlled subsidiary of Red Owl Stores, Inc.

"Red Owl Stores, Inc., has a past history of violations of the state pharmacy law and the Federal Food and Drug Act.

"Red Owl Stores, Inc., is presently violating the state pharmacy law.

"The applicants did not submit any evidence or indication that Red Owl Stores, Inc., will discontinue such violations of the state law in the future.

. "Mr. Lloyd D. Berkus and Attorney Charles S. Bellows, appearing for * * * applicants, admitted that they did not represent * * * Red Owl Stores, Inc., and therefore any statements which they made regarding the Snyder's Drug Stores, Inc., were meaningless and without effect * * *."

In a memorandum attached to the order of the district court which reversed the above order, the court stated:

"Sec. 151.19[2] does not give a discretion to the Board of Pharmacy to refuse to renew a license to stores already properly registered * * *.

\* \* \* \* \*

"* * * this is a mandatory provision, providing * * * there has been no violation by such applicant under Sec. 151.20.[3]

\* \* \* \* \*

"There is no proof in the record that any of the Snyder Drug Stores, applicants for renewal of licenses, ever violated the provisions in Sec. 151.20 or ever have been found guilty of any of the offenses named therein. Hence, in the opinion of the court, the Snyder Drug Stores would be entitled to have their stores registered * * *.

\* \* \* \* \*

"* * * can the Board of Pharmacy refuse to register the Snyder Drug Stores, 21 in number, and thus put the stores and all of their

---

[2] Minn. St. 151.19 provides in part: "The board shall require and provide for the annual registration of every pharmacy * * *. * * * the board shall issue a license in such form as it may prescribe to such persons as may be qualified by law to conduct a pharmacy."

[3] Minn. St. 151.20 provides: "The board may suspend, revoke, or refuse to renew any registration obtained by false representation or fraud, or when the pharmacy for which the registration shall have been made is kept open for the transaction of business without a pharmacist in charge thereof, or when the person to whom registration shall have been granted has been convicted for violation of any of the provisions of this chapter or for a felony, or, if a natural person, whose pharmacist license has been revoked * * *. Before any registration can be revoked, the holder thereof shall be entitled to a hearing by the board * * *. The accused may be represented by legal counsel * * * and have the right of appeal to the district court of the proper county on the question of law and fact."

employees out of business, merely because the stock of the Snyder Drug Stores is held by the Red Owl Stores?

\* \* \* \* \*

"There is no question but that the Red Owl Stores had a right to buy all the stock of the Snyder Drug Stores if it so chose, by trade or purchase for cash. The decision in Liggett Co. v. Baldridge, 278 U. S. 105, 49 S. Ct. 57, disposed of this question. \* \* \*

\* \* \* \* \*

"It is not for the Pharmacy Board to say that a corporation cannot hold stock in another corporation, even if the other corporation is a drug store \* \* \*.

"The Board has already attempted to determine by the promulgation of a rule that no person or corporation or partnership can own a drug store unless they are pharmacists, or unless the corporation is controlled by pharmacists \* \* \*. [Regulation 14, *supra*.]

\* \* \* \* \*

"\* \* \* This has never been the law \* \* \* it is not the province of a Board of Pharmacy to make a regulation amounting to law establishing who can and who cannot own or participate in the ownership of a drug store. \* \* \* By no logic can it be argued that because the stock of a drug store corporation is owned by someone other than those who manage it, such is inimical to the health and welfare of the people of the state."

"If it were not for the record of conviction of the Red Owl Stores, Inc., for certain violations of Federal laws, made a part of the return, there would be no evidence before the court that even the Red Owl Stores, Inc. had ever been convicted of any wrongdoing, and there is no evidence, even so, that indicates that Red Owl Stores, Inc. has ever been convicted of, or charged with, any violation of the pharmacy law."

"\* \* \* in the court's opinion it was improper for the respondents to attach to the return certain exhibits indicating that the Red Owl Stores, Inc., had been adjudged guilty of acts prohibited by the laws of the United States, all of which convictions were for crimes generally

known as malum prohibitum. These judgments were not introduced in evidence at the hearing that the Board instituted * * * but apparently constituted at least a part of the justification for the refusal to grant the licenses in question. These judgments against Red Owl may have been nuisance settlements, for small crimes either not committed or done by mistake of fact or law but less expensive to the company to plead guilty than to stand trial. They were not felonies in any event. Had these matters been introduced at the hearing and the Red Owl Company confronted with them, it might have had answers to such judgments which might have convinced the Board or the court on this hearing that such matters had no real effect on the health or welfare of the people of Minnesota and thus did not afford the Board a reason or justification for not granting licenses to Snyder's. * * *

* * * * *

"In the case brought against the Red Owl Stores by the State and the State Pharmaceutical Association, an injunction was sought * * * to enjoin Red Owl Stores, Inc., from selling eighteen items of merchandise which it was claimed was the sale of drugs, medicines or poisons contrary to law. The case was tried * * * and the injunctive relief denied, as well as a motion for a new trial. The matter was appealed to the Supreme Court, which * * * affirmed the denial of a motion for a new trial, affirmed the decision of the court denying injunctive relief, but reversed that part of the decision which held that the articles in question were proprietary medicines and that in fact there is no such thing as a proprietary medicine * * *.

"* * * the Supreme Court has clarified what proprietary medicines are and has indicated to the Pharmacy Board by its decision that the proper proceedings for the Board to take is to prosecute criminally any infraction of the Pharmacy Law by the Red Owl Stores or any stores similarly situated. [State v. Red Owl Stores, Inc. 262 Minn. 31, 115 N. W. (2d) 643.]

* * * * *

"When a simple remedy is available to the Board, namely, the prosecution of the grocery company in a ciminal proceeding, it seems to

14

the court that the consequences of following the desire of the Board in this litigation are dire indeed * * *.

\* \* \* \* \*

"\* \* \* the court is of the opinion that the Board did not proceed upon a proper theory of law and that its action in denying the licenses was arbitrary, oppressive, unreasonable and capricious, and the evidence upon which the decision was predicated does not afford a reasonable and substantial basis for the determination."

On appeal the board concedes that Minn. St. 151.20 has no application here and it places no reliance upon Regulation 14. It relies upon the delegation of its powers set forth in § 151.06,[4] upon the provisions of § 151.19, and upon its Regulation 5, which provides:

"When a pharmacy changes ownership the original license becomes void and must·be surrendered to the Board, and a new license secured by the new owner or owners. This is required even in case there is no change in the name of the pharmacy or in the registered pharmacist in charge of the pharmacy. An established pharmacy operating under new ownership is regarded as a new enterprise and a fee not to exceed $20.00 must be paid by the new owner for a new license."

It concedes also that it has no arbitrary power to grant or deny applications for original or renewal licenses or registrations but asserts that here it merely exercised the discretionary authority delegated to it

---

[4]Minn. St. 151.06 provides in part: "The state board of pharmacy shall have the power and it shall be its duty:

"(1) To regulate the practice of pharmacy;

"(2) To regulate the sale of drugs, medicines, chemicals, and poisons;

"(3) To regulate the quality·of all drugs and medicines dispensed in this state, using the United States pharmacopeia and the national formulary, or any revisions thereof, as the standards;

\* \* \* \* \*

"(9) To perform such other duties and exercise such others powers as the provisions of the act may require;

"(10) For the purposes aforesaid it shall be the duty of the board to make and publish uniform rules and regulations not inconsistent herewith for carrying out and enforcing the provisions of this chapter."

under §§ 151.06 and 151.19; and that its exercise of such authority in the manner above described was in all respects reasonable and valid.

The record (not including certain judgments against Red Owl Stores, Inc., which were attached thereto by the board subsequent to the hearing and accordingly have no place in these proceedings) presents for determination here the sole question whether the acquisition of the controlling corporate stock of Snyder's by Red Owl Stores, Inc., was sufficient in itself to justify the board's denial of the application for renewal licenses for the 21 drug stores involved herein. It is undisputed that Snyder's has never violated any of the provisions of § 151.20; that the operation of its drug stores has at all times been reputable and in accordance with the laws of the state. Its policy and its management at the time of the hearing before the board were exactly the same as they had been for many years prior thereto, and evidence was presented that there was no intention of discontinuing such policy or management at any time in the near future.

With respect to Red Owl Stores, Inc., the evidence established that this corporation has operated various retail food stores in the Minneapolis-St. Paul area for many years which have offered for sale such items as Ex-Lax, Alka Seltzer, and like preparations ordinarily offered for sale in drug stores. Twice the courts have denied the board's petition to enjoin it from selling such items. State v. Red Owl Stores, Inc. 253 Minn. 236, 92 N. W. (2d) 103; State v. Red Owl Stores, Inc. 262 Minn. 31, 115 N. W. (2d) 643; 47 Minn. L. Rev. 310. In the latter decision this court stated that proper procedure for the board to follow in the event any of the state's pharmacy laws were being violated by Red Owl Stores, Inc., was for the board to institute criminal proceedings against it for such violations. No such proceedings were ever instituted. Accordingly, it must follow that there is nothing in the record which would justify the board's finding that because of past misconduct on the part of Red Owl the issuance of renewal licenses or registrations to Snyder's should be denied.

By this we do not mean that under all circumstances the activities or past records of the controlling stockholders or stockholder of a pharmaceutical corporation should not be given careful consideration by the

16

board in determining whether the application for license or registration for the operation of a drug store by such corporation should be granted. There may be instances where the record of such a controlling stockholder may disclose the commission of felonies or other misconduct on his part which would justify the denial of such an application. In the instant case, however, where there was nothing before the board to manifest such a situation or to indicate that there was anything in the record of Red Owl Stores, Inc., which would justify the denial of the issuance of a license or registration to its subsidiary, Snyder Drug Stores, Inc., the conclusion cannot be escaped that the action of the board in so doing was arbitrary. Accordingly, the order appealed from should be affirmed.

Affirmed.