A. Scott HAMILTON, Commonwealth Attorney, Jo M. Ferguson, Attorney General, Appellants,

v.

CITY OF LOUISVILLE, Appellee.

Court of Appeals of Kentucky.

Feb. 19, 1960.

A. Scott Hamilton, Commonwealth Atty. of Jefferson County, Louisville, Jo M. Ferguson, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellants.

William E. Berry, Acting Law Director, Herman E. Frick, Henri L. Mangeot, Asst. City Attys., Louisville, for appellee.

CLAY, Commissioner.

We are again faced with the tribulations of time. This suit is an attack on the validity of our 1952 statute undertaking to regulate its official measurement in Kentucky. The Chancellor held the Act void.

It was anciently observed, "Our time is a very shadow that passeth away". In Kentucky this is only a half truth. Our time is a fleeting shadow, but unfortunately, as a chronic problem in calculation, it will not pass away.

It cannot be said with certainty what time it is in Kentucky. Watches show one hour and the courthouse clock another. It is five o'clock in Frankfort, but it is four o'clock in Louisville. This is rather convincing evidence that the hour was not a divine creation, but is wholly man made and arbitrary. What time it is, is what a person thinks it is, and practically nobody in Kentucky today is quite sure.

A brief history of our time troubles will help us understand the present problem.

Until World War II the Commonwealth had not attempted official regulation of this elusive subject matter. Prior to 1918 many Kentuckians had set their clocks to conform to mean solar time (this is an arbitrary measurement, although some people consider it "God's time"), while others followed "railroad time" which had been fixed by agreement of the major railroads in the United States. Back in the old days when a question was raised in a lawsuit as to what time it was, the matter was one for the jury to determine. Rochester German Ins. Co. v. Peaslee-Gaulbert Co., 120 Ky. 752, 87 S.W. 1115, 27 Ky.Law Rep. 1155, 1 L.R.A.,N.S., 364. (It was pointed out in that opinion that no clock had yet been devised which could accurately follow the apparent movement of the sun.)

In 1918 the Federal Congress, exercising its power over interstate commerce, established a "standard" time to be observed for certain purposes. The Act (15 U.S.C.A. §§ 261–265) designated five zones in the United States and provided that mean astronomical time should constitute the standard time for those zones. Starting in the east and moving west, those zones were designated Eastern, Central, Mountain, Pacific and Alaska. The Interstate Commerce Commission (hereafter referred to as "ICC") was authorized to define the limits of each zone. The effect of this Act was to (1) recognize mean astronomical time as a proper time measurement for interstate commerce purposes, (2) designate this time as "standard", and (3) authorize the ICC to determine which standard should apply within the confines of a designated area.

Unfortunately the State of Kentucky did not fall within a single time zone as designated by the ICC. The boundary line fixed between the "eastern" zone and the "central" zone wanders around in northern and eastern Kentucky. As shown on the clock, there is a difference of one hour between the two zones.

After 1918, without any state regulation on the subject, the people of Kentucky generally conformed to what we may call "railroad time", which to a certain extent followed the designated zone lines. However, as a matter of custom and convenience, particularly in northern Kentucky, the people appreciably extended the "eastern" time zone area deeper into the State. We believe we are correct in saying that "eastern

time" long recognized in some parts of Kentucky *does not conform with the zone lines fixed by the ICC*.

In 1942, as an emergency measure, the Federal Congress advanced its "standard" time one hour. Thereupon the Kentucky legislature entered the field. By an Act of 1942 (KRS 39.290), the General Assembly fell in line with the Federal Congress by advancing time measurement in Kentucky one hour. This Act applied to the same political subdivisions, institutions and persons covered by the Act now under consideration. When the war emergency ended and the Federal Act was repealed, this state legislation was held to have fixed a continuing time standard for Kentucky. City of Louisville v. Louisville Livestock Exchange, 302 Ky. 536, 195 S.W.2d 76. The statute was repealed in 1950.

Since the War we have had, as one court expressed it, "a considerable amount of undesirable confusion". The specter of "daylight saving" time, welcomed by certain segments of our citizens, apparently is shocking to other segments, some of whom think it not only impractical and inconvenient, but constitutes the violation of a divine mandate not to tamper with time. After a statutory experiment allowing cities of the first class to adopt "daylight saving" time (KRS 2.150–1950), which was of very short duration, the legislature in 1952 enacted the statute before us, KRS 2.160. If the legislature hoped that this statute would settle the time problem, it was a vain hope. While some semblance of an official time for public purposes was established, the people of Kentucky in various sections set their clocks to suit their local convenience and disregarded the hands on the clock face in the tower of the county courthouse.

In 1958 the legislature attempted to bring the wavering populace into line by adding to KRS 2.160 the provision that businesses must conform to a "standard of time" and by fixing criminal penalties for violation of the Act. This amendment was held unconstitutional on several grounds in Dawson v. Hamilton, Ky., 314 S.W.2d 532. The decision had the effect of revitalizing the original KRS 2.160, (enacted in 1952) which is now before us and which reads as follows:

"Section 1. *The standard time fixed and prescribed for the Commonwealth of Kentucky by Act of Congress or by order of the Interstate Commerce Commission* shall apply to and govern all laws, regulations and rules relating to the time of performance of any act by any officer or department of the Commonwealth, or of any county, city or subdivision or agency thereof, or relating to the time that any right shall accrue or determine, or within which any act shall or shall not be performed by any person subject to the jurisdiction of the Commonwealth, and in all the public schools and institutions of the Commonwealth, and on the public works of the Commonwealth, or any county, city or district thereof, or in all contracts or choses in action made or to be performed in the Commonwealth." (Our emphasis.)

The citizens of Louisville apparently enjoy the seasonal convenience of "daylight saving" time, and have on the books an ordinance enacted in 1950 providing for a deviation from "central standard" time during the summer months. The above quoted statute has the effect of invalidating such ordinance, and the city brought suit to have the Act declared unconstitutional, null and void. The Chancellor adjudged it was void under our decision in Dawson v. Hamilton, Ky., 314 S.W.2d 532.

From the history given in this opinion, it seems clear that the legislature was attempting to stabilize clock-time in Kentucky. An objection raised by the city is that the language used by the legislature to accomplish this result is so ambiguous, vague, and uncertain that the statute cannot be given effect. To begin with, there is no such thing as "a standard time fixed and prescribed for the Commonwealth of Kentucky" by an act of Congress or the ICC. The standard

time fixed by Congress is nothing more than mean astronomical time at specified degrees of longitude west of Greenwich, and it does not constitute *a* standard *for* Kentucky. We may assume, however, that what the legislature meant was that the *zone* line designated by the ICC separating the "eastern" and "central" zones should be observed in determining official clock time in Kentucky. This leads us into serious difficulty.

The statute does not designate a particular regulation or regulations of the ICC which are incorporated into our law. Certainly a reasonable degree of definiteness is required when a foreign law or regulation is adopted. 82 C.J.S. Statutes § 68e, p. 120. We will pass by the argument, which may have merit, that a general reference such as this imposes an undue burden on the person required to comply with the statute to research and ascertain the specific foreign law or regulation which governs his conduct. The more serious objection presented in this particular case is that we cannot be sure that the legislature *intended the result this general language accomplishes.*

The ICC regulation effective in 1952, to which this statute may be deemed to refer, appears in Title 49, Code of Federal Regulations, Section 139.3(b), (c), (g). This regulation designates the line between the "eastern" and "central" zones as running along the Chesapeake & Ohio Railway, which parallels and is in close proximity to the Ohio River, from Cincinnati to Catlettsburg. The line then progresses southwesterly to include a number of counties, or parts of counties, in eastern Kentucky. Subsection (b) of this regulation provides that municipalities located *on this zone boundary line* shall be within the standard *central time zone.*

Applying this regulation and accepting this zone boundary, if that is what the legislature intended, may be interpreted as having the following effect: All of the cities in northern Kentucky, or parts thereof, ly-ing south of the C. & O. Railroad, which includes Covington, Ft. Mitchell, Erlanger, Florence and other cities in the Cincinnati area, Maysville and Ashland, are placed in the *central time zone.* It is a well known fact that for a great many years all of these cities and a substantial portion of the surrounding areas have observed *eastern* time. Particularly in the metropolitan area of Cincinnati, for governmental, business and personal affairs, it is nothing short of sensible that the Kentucky suburban sections operate on the same time schedule as their neighbors do across the railroad track or across the Ohio River.

We are immediately confronted with this question: Did the legislature actually intend to place these Kentucky areas, which for at least 40 years had observed *eastern* time, in the *central time zone* so that they must henceforth observe central time? It is difficult for us so to believe. If the statute had referred specifically to this regulation, thereby indicating the legislators had knowledge of its import, we might have a key to their intention. Not having done so, we are quite uncertain that the legislature meant to change the status quo of time observance as it had existed for so many years in the northern and eastern sections of Kentucky. (It may be observed that this Federal regulation itself, designed to fix railroad time for interstate commerce purposes, seems to be quite inadequate as designating a rational zone line for the Kentucky areas affected.)

Coupled with this uncertainty is the question of whether or not the legislature would have intended to freeze time measurement in Kentucky to the ICC regulations effective in 1952 if the prospective aims of the Act could not be given effect. In Dawson v. Hamilton, Ky., 314 S.W.2d 532, we decided that these same reference provisions were unconstitutional to the extent they undertook to adopt *future* regulations of the ICC. The reason for this was that the interstate commerce considerations before the ICC concerning future time zone

changes have no necessary relationship to the requirements, necessities, economy, convenience, welfare, or government of the State of Kentucky as a whole. (This would probably not be true with respect to statutes adopting federal standards of weights and measures, or federal income tax provisions.) We accepted in that case the view that the legislature intended to shift to the ICC, for the present and the future, the entire responsibility of determining what clock-time chronology should be observed in Kentucky. This particular problem should not be, and cannot be, delegated in such manner.

It is doubtful the legislature would have undertaken to gear Kentucky time to interstate commerce time with the knowledge it could not properly delegate to the ICC future changes in the Kentucky system. Apparently the legislature intended that *intrastate* time should *always* be the same as *interstate* time, and if that result could not be accomplished by such a law, as we decided in the Hamilton case, the legislature would not have enacted the statute. In any event, the uncertainty concerning legislative intent in this respect, coupled with the uncertainty that the legislature intended to abolish the time differential long recognized and observed in northern and eastern Kentucky, leads us to the conclusion that the controlling language of this statute is too indefinite to be given effect. Therefore it may not be invoked as prohibiting the action taken by the City of Louisville.

Had we reached a different conclusion, the time problem in Kentucky would still remain unsolved.

The judgment is affirmed.

STEWART and PALMORE, JJ., dissent on the ground that the Act is sufficiently definite, and that its provisions were effectively upheld in the Dawson case (314 S.W.2d 532).