Rita STINER, dba Springdale Day Care Center, Joann Chatman Moss and Jimmy Moss, dba Snow White Play School, Betty Cargill, dba Windsor Day Care Center, Nell Nale, dba Keystone Learning Center, Jo Sims, dba Sims Nursery Preschool, Gloria Keil, Patricia Hart, Marilyn Gordon, and Brenda Count, Plaintiffs,

and

the Honorable David L. Boren, Governor, ex rel. the State of Oklahoma, Plaintiff-Intervenor,

v.

Joseph A. CALIFANO, Jr., Secretary, United States Department of Health, Education and Welfare, Defendants.

No. Civ–75–0814–D.

United States District Court, W. D. Oklahoma.

Sept. 26, 1977.

Robert O. Stiner, Jr., Oklahoma City, Okl., for plaintiffs.

Larry Derryberry, Atty. Gen., State of Okl., Paul C. Duncan and James H. Gray, Asst. Attys. Gen., Oklahoma City, Okl., and Maurice H. Merrill, Norman, Okl., for intervenor.

John E. Green, Acting U. S. Atty., James L. Swartz, Asst. U. S. Atty., Oklahoma City,

Okl., and Jaclyn C. Taner, Atty., HEW, Washington, D. C., for defendants.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief District Judge, and EUBANKS, District Judge.

## MEMORANDUM OPINION

HOLLOWAY, Circuit Judge:

■ This injunction suit presents questions concerning the constitutionality of 42 U.S.C. § 1397a(a)(9)(A)[1] and an administrative regulation, 45 C.F.R. § 228.42, promulgated thereunder by the Department of Health, Education and Welfare (HEW), requiring certain staffing ratios for day care centers receiving social services funds under Title XX of the Social Security Act, 42 U.S.C. § 1397, et seq., as they apply to care for children up to three years of age. The regulation specifies that there shall be one adult for each child under six weeks of age and one adult for each four children of the ages of six weeks through 36 months as a condition for "federal financial participation."[2]

Plaintiffs allege that they have been informed by the Secretary of HEW through

---

[1] 42 U.S.C. § 1397a(a)(9)(A), provides in part:

(9)(A) No payment may be made under this section with respect to any expenditure in connection with the provision of any child day care service, unless—

\*   \*   \*   \*   \*   \*

(ii) in the case of care provided outside the child's home, the care meets the Federal interagency day care requirements as approved by the Department of Health, Education and Welfare and the Office of Economic Opportunity on September 23, 1968; except that (I) subdivision III of such requirements with respect to educational services shall be recommended to the States and not required, and staffing standards for school-age children in day care centers may be revised by the Secretary,

(II) the staffing standards imposed with respect to such care in the case of children under age 3 shall conform to regulations prescribed by the Secretary,

(III) the staffing standards imposed with respect to such care in the case of children aged 10 to 14 shall require at least one adult for each 20 children, and in the case of school-aged children under age 10 shall require at least one adult for each 15 children,

\*   \*   \*   \*   \*   \*

(IV) the State agency may waive the staffing standards otherwise applicable in the case of a day care center or group day care home in which not more than 20 per centum of the children in the facility (or, in the case of a day care center, not more than 5 children in the center) are children whose care is being paid for (wholly or in part) from funds made available to the State under this subchapter, if such agency finds that it is not feasible to furnish day care for the children, whose care is so paid for, in a day care facility which complies with such staffing standards, and if the day care facility providing care for such children complies with applicable State standards . . .

The controversial provision is the staffing requirement in the regulation with respect to

children under age 3. See note 2, infra. However, we feel that the validity of the regulation necessarily implicates the statute in this case. Injunctive relief would threaten operation of the entire regulatory scheme, see Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154, 83 S.Ct. 554, 9 L.Ed.2d 644 and would not leave the statute wholly intact. Compare National Student Association v. Hershey, 412 F.2d 1103, 1124 n. 56 (D.C.Cir.). For these reasons we denied a motion to dissolve this three-judge court and concluded that such a panel is required. The action was commenced prior to the 1976 statutory changes on three-judge courts and the former statutory provisions therefore apply. See 28 U.S.C. § 2282–84 (1970).

[2] 45 C.F.R. § 228.42 provides in pertinent part:

(a) FFP [Federal financial participation] is available for child care services provided under a services plan only where the following standards are met:

\*   \*   \*   \*   \*   \*

(2) Out-of-home care.

\*   \*   \*   \*   \*   \*

(ii) Such facilities and care meet the 1968 Federal Interagency Day Care Requirements, except that:

\*   \*   \*   \*   \*   \*

(B) Required staffing standards for children under age 3 in day care centers and group day care homes are: 1 adult for each child under 6 weeks of age; 1 adult to 4 children, ages 6 weeks through 36 months. (States may, at their option, require fewer children per adult.)

(C) Required staffing standards for school age children in day care centers are: at least 1 adult to 15 children, ages 6–10; and at least 1 adult to 20 children, ages 10–14.

The staffing requirements provided by this regulation are effective October 1, 1977 under the terms of P.L. 94–401, § 2, September 7, 1976, 90 Stat. 1215.

the Director of the Oklahoma Department of Institutions, Social and Rehabilitative Services that if they do not comply with 42 U.S.C. § 1397a(a)(9)(A) and 45 CFR § 228.42 they will not be able to keep children whose payments are provided by welfare assistance and/or federal funds, or that their licenses to operate day care centers would be revoked, cancelled, suspended or not renewed.

The plaintiff day care center operators argue that the implementation of the statute and regulation would be in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, a denial of the equal protection of the law, and an abridgement of their privileges and immunities because they would be forced to close their businesses and thereby lose their property and income. The plaintiff day care center users assert that the implementation of the statute and regulation would violate their right to equal protection because they would be forced to quit their employment to take care of their children or pay a higher rate for the care of their children, and that such requirements arbitrarily set them aside as a group.

The Secretary defends the statute and regulation as a reasonable exercise of the spending power of the Congress and argues that their validity is supported by legitimate and proper concern for the safety and care of small infants and the very young children, in accord with a long history of Congressional solicitude for children in day care facilities.

■ The court denied pretrial motions and intervention sought by the State of Oklahoma.[3] The case was tried with the evidence being submitted by depositions and affidavits from both sides. It is convenient to discuss the proofs as we treat the separate constitutional issues. This opinion will constitute our findings of fact and conclusions of law on these issues.

## THE VALIDITY OF EXERCISE OF ARTICLE I SPENDING POWER

The plaintiffs challenge the validity of the statute and regulation on the ground that they are not a valid exercise of Congressional power under Article I, § 8 of the Constitution to collect revenues and ". . . to pay the Debts and provide for the common Defence and general Welfare of the United States . . . " The argument essentially is that the demand for such staffing ratios, if it exists, comes from but a few States; that the expenditure made cannot be for the general welfare; and that, therefore, the regulation is invalid. Reliance is placed on *Butler v. United States,* 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477.

In the *Butler* case the Court held that the Agricultural Adjustment Act invaded rights reserved to the States and was "a statutory plan to regulate and control agricultural production, a matter beyond the powers delegated to the federal government." Id. at 68, 56 S.Ct. at 320. However, the Court also made it clear that when such an attack is made on a statute every presumption is indulged in favor of its constitutionality and that it must be shown ". . . that by no possibility can the challenged legislation fall within the wide range of discretion permitted to the Congress." Id. at 67, 56 S.Ct. at 320.

■ We cannot agree that such a showing is made in this case. Instead, we must agree that expenditures and conditions in related statutes and regulations seeking to provide for and protect the interest of children in such day care centers is within the permitted purposes. "The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis,* 301 U.S. 619, 640, 57 S.Ct. 904, 908,

---

**3.** Essentially the intervention sought by the State of Oklahoma was rejected because we concluded that the State could not assert as, *parens patriae,* constitutional claims of its citizens since that capacity rests with the United States in respect of federal matters, *Massachu-*setts v. Mellon, 262 U.S. 447, 485–86, 43 S.Ct. 597, 67 L.Ed. 1078 and because the State is not a person within the Due Process Clause of the Fifth Amendment. *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 15 L.Ed.2d 769.

81 L.Ed. 1307. We feel the purposes of the expenditures and the conditions are well within the Congressional authority under Article I. See *Helvering v. Davis*, supra, 301 U.S. at 640–45, 57 S.Ct. 904; *Steward Machine Co. v. Davis*, 301 U.S. 548, 588–591, 57 S.Ct. 883, 81 L.Ed. 1279.

■ Furthermore, we cannot agree that the conditions placed upon the grants to the states by 42 U.S.C.A. § 1397a(a)(9)(A) are an invalid form of economic duress, as plaintiffs argue.[4] See *Steward Machine Co. v. Davis*, supra, 301 U.S. at 585–86, 57 S.Ct. 883. Unless barred by some controlling constitutional prohibition, Congress may impose terms and conditions upon which its money allotments to the States shall be disbursed. See *King v. Smith*, 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118; *Ivanhoe Irrigation District v. McCracken*, 357 U.S. 275, 295, 78 S.Ct. 1174, 2 L.Ed.2d 1313; *Oklahoma v. Civil Service Commission*, 330 U.S. 127, 143, 67 S.Ct. 544, 91 L.Ed. 794; *Lau v. Nichols*, 414 U.S. 563, 569, 94 S.Ct. 786, 39 L.Ed.2d 1 (Stewart, J., concurring in the result); *State of Florida v. Mathews*, 526 F.2d 319, 326 (5th Cir.).

In sum, we must sustain the statute and regulations as being within the general powers of the Congress under Article I. It remains to deal with specific attacks on the regulation under the Due Process Clause, to which we now turn.

### THE PLAINTIFFS' DUE PROCESS CLAIM

Plaintiffs' vigorously challenge the constitutionality of the staffing requirements in question under due process principles. They say that they are wholly unnecessary to assure proper day care services for children, that they are an arbitrary and unreasonable interference with plaintiffs' property and liberty interests, and that the regulations are an invalid exercise of economic duress, citing *Liggett Co. v. Baldridge*, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204; *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 125, 67 L.Ed. 1042; *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 and similar cases. Plaintiffs' sought to support their claims by proof at trial that the staffing requirements were unreasonable and would impose severe financial burdens needlessly and were unnecessary for the safety or welfare of the young children affected.

Plaintiffs' evidence was submitted mainly by depositions of day care center operators and parents. For example, plaintiff Stiner testified that she was the owner of the Springdale Day Care Center in Oklahoma City and had been in this business since March, 1972 (approximately four years and nine months). She testified that the one to one ratio for infants under 6 weeks of age is unreasonable; that an employee cannot be hired at $25 or $30 per day when a child's care is charged for at $5.00 per day; also that the one to four ratio for children of the ages of six weeks to 36 months cannot be maintained without some other children with higher ratios to subsidize the lower ratios; that from care of four such children the income would be $20 per day and the cost of keeping them would be $25 to $30 per day, and she would lose money. There are food expenses, as well, of 75¢ to 80¢ for an additional overhead expense of about $5.00 per child per day. She testified that for protection in case of fire a one to one ratio was not needed and also that the infants are sleeping most of the time. If they are ill, they are not to be in the center at all. (Plaintiffs' Ex. 2, 36–39).

---

4. A somewhat related argument against the validity of the regulation was made by the intervenor on the basis of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245. As our earlier order denying various motions stated, we feel those principles do not apply here. We cannot agree that the challenged statute and regulation would " . . . operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions . . . " Id. at 852, 96 S.Ct. at 2474. We note that the Court specifically pointed out that it expressed no view as to whether different results might obtain if Congress sought to affect such operations by exercise of another power such as the spending power, instead of through the Commerce Clause whose use was involved in the *National League of Cities* case. Id. at 852 n. 17, 96 S.Ct. 2465.

Plaintiff Nale, another center operator, testified that she will lose most of the children in her center under the new staffing requirements. This will occur because most parents will not be able to afford the increased rates for day care services required if the center complies with the regulation, and because of a lowering of the AFDC mothers' income ceiling from $630 to $500 per month which controls subsidy payments. Out of $500, the mothers could not afford to pay $120 a month for child care. (Plaintiffs' Ex. 4, 25–26).

Plaintiff Keil stated she was keeping her two young children in the Springdale center. She works and is not on public assistance. She had been told the rates would have to increase from $20 to $100 per child per week if the rules take effect. In this event, she would be compelled to stop working and remain at home full time with her children. She has a weekly take home pay of approximately $125 and her husband has about $550 per month take home pay. (Plaintiffs' Ex. 5, 3–9).

Similar proof is found in the depositions of other center operators and mothers. The plaintiffs also introduced evidence on safety precautions for children, fire evacuation plans and the like, and the lack of fire injuries to infants in day care centers, all tending to show that the staffing requirements are unnecessary and unreasonable.

The Secretary's evidence came in through the affidavit of Ms. Hoffman. (Defendant's Ex. 1). She has been the Day Care Specialist of the Community Services Administration, Social and Rehabilitation Service of HEW since 1969. Ms. Hoffman stated further that child development experts within and without the federal government had traditionally been disinclined to encourage care of infants and toddlers in group care settings; family day care was a preferred method of care outside the child's home.

In addition Ms. Hoffman stated that in developing the staffing requirements in question the Department first took note that earlier regulations required one adult for each five children between three and four, and determined that the ratio for care of children under three could in no event be less strict than this ratio. Opinions of experts such as those representing the American Academy of Pediatrics were considered. Fire safety concerns and the number of children an adult could carry in case of fire were taken into account, along with the fact that two year old children tend to be at a negative somewhat unmanageable stage of development. It was also felt that the staffing requirement should safeguard the special interests of poor children, often cared for in less than optimum conditions in poor neighborhoods.

From this evidence, plaintiffs argue that cases like *Liggett Co. v. Baldridge*, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204; *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 125, 67 L.Ed. 1042; and *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 require the invalidation of the staffing requirements as unnecessary and unreasonable.

In the *Liggett* case a statute prohibited corporate ownership of pharmacies, in addition to those owned by the company at the time of enactment of the law, unless all stockholders were licensed pharmacists. The statute was held invalid under the Due Process Clause because there was no showing in the record or otherwise of any detriment to the public health by such ownership. 278 U.S. at 112–114, 49 S.Ct. 57. The case, however, is difficult to apply here since there is some showing in the Government's proof to support the administrative judgment, despite considerable proof to the contrary in the plaintiffs' evidence on the unreasonableness of the regulations and hardships they will impose. We feel that in view of the posture of the case before us, the decision of the Supreme Court in an Oklahoma case concerning health problems is more in point where the Court stated that "[t]he Oklahoma law may exact a needless, wasteful requirement in many cases. But it is for the legislature, not the courts, to balance the advantages and disadvantages

of the new requirement," *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563.

Nor do we feel that *Meyer v. Nebraska* or *Pierce v. Society of Sisters* apply in these circumstances. In *Pierce* the Supreme Court struck down an Oregon statute which, with some exemptions, required parents and guardians to send children eight to 16 years old to public schools. The statute aimed at parochial schools was held to be an unreasonable interference with fundamental liberty interests as to the upbringing of children, with no reasonable relation to a purpose within the competency of the state. 268 U.S. 534–35, 45 S.Ct. 571. The *Meyer* case similarly held that liberty interests were invalidly infringed by a Nebraska statute forbidding the teaching of any language but English to any child who had not successfully completed the eighth grade. The Court said that no emergency had arisen which rendered knowledge of another language clearly harmful so as to justify infringement of "rights long freely enjoyed." 262 U.S. at 403, 43 S.Ct. 125.

█ We are not convinced that these cases of infringement with fundamental liberty interests apply, or that we have a case where there is *no* rational basis to be perceived for the regulation. Without doubt, the plaintiffs have shown strong views contrary to those of HEW[5] and they have developed facts arguing against the regulation. Nevertheless we feel that the plaintiffs' case does not meet the stringent test for declaring such a regulation unconstitutional as stated by the Supreme Court in *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435:

. . . Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

█ The Supreme Court has clearly stated the general guide to be that a statutory classification in the area of social welfare is consistent with due process requirements of the Fifth Amendment, and likewise with equal protection concepts, if the classification is "rationally based and free from invidious discrimination." *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231; *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491. The regulations must be presumed to be constitutional and may be set aside only if no grounds can be conceived to justify them. See *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739. The courts do not substitute their social and economic beliefs for the judgment of legislative bodies. *Seagram & Sons v. Hostetter*, 384 U.S. 35, 47, 86 S.Ct. 1254, 16 L.Ed.2d 336.

In conclusion, we cannot say that the staffing regulation conditions on the grant of federal funds "manifests a patently arbitrary classification, utterly lacking in rational justification . . . " *Flemming v. Nestor*, supra, 363 U.S. at 611, 80 S.Ct. at 1373. Accordingly, we must hold that grounds for invalidating the statute and regulation have not been established and that the relief the plaintiffs seek must be denied and the action dismissed.

---

5. The regulations of HEW are not attacked as unauthorized and it is clear that they were within the specific authority confided to the Secretary with respect to children under age three. See 42 U.S.C.A. § 1397a(a)(9)(A)(ii)(II).